INTERSTATE DROP FORGE COMPANY, a corporation, Petitioner,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent.

No. 14260.

United States Court of Appeals Seventh Circuit.

Jan. 7, 1964.

Rehearing Denied Jan. 29, 1964.

Thomas J. Donnelly, Jr., Patrick W. Cotter, Samuel J. Recht, Milwaukee, Wis., for petitioner-appellant, Brady, Tyrrell & Bruce, Milwaukee, Wis., of counsel.

Louis F. Oberdorfer, Asst. Atty. Gen., Robert J. Golten, Atty., Tax Division, Dept. of Justice, Washington, D. C., Lee A. Jackson, Gilbert E. Andrews, Attys., Dept. of Justice, Washington, D. C., for respondent.

Before HASTINGS, Chief Judge, and KILEY and SWYGERT, Circuit Judges.

SWYGERT, *Circuit Judge.*

Petitioner, Interstate Drop Forge Company, a Wisconsin corporation with its principal place of business in Milwaukee, petitions this court for a redetermination of its income tax liability for the year 1957. The Commissioner of Internal Revenue assessed a tax deficiency of $15,600 based on a disallowance of a deduction of $30,000 which was taken by taxpayer as a business expense in its 1957 return. The deduction represented a payment made to the widow of taxpayer's deceased president, Charles E. Stone. The Tax Court sustained the Commissioner.

Interstate Drop Forge was organized in 1922 and manufactures steel forgings. Stone became president of the company in 1927 at a time when it was in financial difficulty. As a result of his excellent management, the company not only solved its financial problems but became a profitable organization.

Stone died unexpectedly in December, 1956. At the meeting of the company directors in January, 1957, the board adopted the following resolution:

RESOLVED, that the Officers and Directors of Interstate Drop Forge Company express and record their deep appreciation of the thirty-six years of devoted service that have been rendered by our late President, Charles E. Stone, to the stockholders of this Company, through his wise, energetic and successful leadership of this industry. We feel, too, an individual loss of his delightful companionship.

In gratitude for his outstanding service to the Corporation, which extends back to the founding of the company, we authorize and direct the Management to give to his widow, Queen R. Stone, out of corporate earnings, the sum of money equal to Mr. Stone's base salary for the year 1956. This payment is considered a gratuity and is in no way related to future service to the Company.

The widow was paid $30,000 in March, 1957. The directors authorized the payment in order to give recognition to the services rendered by Stone as president for more than twenty-nine years. They agreed that it was the "right and proper" thing to do under the circumstances.

Three of the directors who attended the board meeting testified before the Tax Court as to the purpose of the payment. Brinton Welser stated that the payment was made not only in recognition of the services rendered by Stone but "to act as an example for other outstanding employees who had made similar accomplishments in the future." J. S. Owen said that the payment was "in recognition of all that Mr. Stone had done for the company and its stockholders" and that the company intended to derive from the payment "such benefits as are collateral to doing the right things, proper things." H. C. Osborn testified that the payment was an expression of gratitude for the services of Stone.

At the time of the resolution, taxpayer had no policy with respect to payment to

widows nor was any such policy specifically formulated at that time. However, at least three of the directors were members of the boards of other companies which did have such a policy. Before Stone died, taxpayer had never had a death among its key executives.

The Tax Court found that taxpayer had failed to prove that the $30,000 payment was intended to serve a business purpose within the meaning of section 162 (a) of the 1954 Internal Revenue Code, 26 U.S.C. 1958 ed. § 162.[1].

Taxpayer contends that the payment to the widow constituted an ordinary and necessary business expense within the purview of section 162(a) for two reasons: (1) Treasury Regulation 118, section 39.23(a)–9,[2] (promulgated under section 23(a) (1) (A) of the Internal Revenue Code of 1939) which permits a deduction for the continuation of salary payments to an employee's widow for a limited period, applies, or (2) if it is necessary to prove a "business benefit" to an employer by positive proof, the Tax Court erroneously rejected direct evidence of a specific business benefit to

the company (as testified to by director Welser) in the absence of any conflicting evidence.

### I.

In 1954 Congress revised and amended the Internal Revenue Code. Section 162 (a) (1) is derived from section 23(a) (1) (A) of the 1939 Code, and, insofar as it is relevant, is a re-enactment of that section without substantial change.

Section 7807(a) of the 1954 Code, 26 U. S.C. 1958 ed. § 7807,[3] and T.D. 6091, 1954–2 Cum. Bull. 47,[4] provide in their combined effect that the 1939 Code regulations shall carry over to taxable years governed by the 1954 Code until superseded by new regulations. Therefore, taxpayer argues that Treasury Regulation 118, section 39.23(a)–9 under the 1939 Code applied to the taxable year 1957. On the other hand, the Commissioner argues that the 1939 Code regulation is not applicable. He points out that section 1.162 of the Treasury regulations under the 1954 Code contains no express reference to widow payments and that by reason of section 7805(b) of the

1. § 162 reads in part:
   "(a) *In general.*—There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including—
   "(1) a reasonable allowance for salaries or other compensation for personal services actually rendered; * * *."

2. § 39.23(a)–9 reads in part:
   "* * * When the amount of the salary of an officer or employee is paid for a limited period after his death to his widow or heirs, in recognition of the services rendered by the individual, such payments may be deducted. * * *"

3. § 7807 provides in part:
   "(a) * * * Until regulations are promulgated under any provision of this title which depends for its application upon the promulgation of regulations (or which is to be applied in such manner as may be prescribed by regulations) all instructions, rules or regulations which are in effect immediately prior to the enactment of this title shall, to the extent

such instructions, rules, or regulations could be prescribed as regulations under authority of such provision, be applied as if promulgated as regulations under such provision."

4. T. D. 6091 provides in part:
   "In order to permit a proper administration of the Internal Revenue Code of 1954, * * * it is hereby prescribed in furtherance of the purposes of section 7807 * * * of the Code that—
   "* * * 1. All regulations (including all Treasury Decisions) * * * applicable under any provision of law in effect on the date of enactment of the Code, to the extent such provision of law is repealed by the Code, are hereby prescribed under and made applicable to the provisions of the Code corresponding to the provision of law so repealed insofar as any such regulation is not inconsistent with the Code. Such regulations shall become effective as regulations under the various provisions of the Code as of the dates the corresponding provisions of law are repealed by the Code, until superseded by regulations issued under the Code."

1954 Code, 26 U.S.C. 1958 ed. § 7805,[5] the 1954 Code regulations, even though adopted in 1958, are retroactive to December 31, 1953.

In response to the Commissioner's argument, taxpayer contends that under the re-enactment doctrine developed in Helvering v. Reynolds Tobacco Co., 306 U.S. 110, 59 S.Ct. 423, 83 L.Ed. 536 (1939), the Commissioner has no authority to adopt retroactive regulations that would abrogate a regulation having the quality of law.

■ We disagree with taxpayer's contention that the re-enactment doctrine is applicable here. As has been pointed out in later Supreme Court cases, the doctrine "has been stated in various and not entirely consistent terms." Helvering v. Griffiths, 318 U.S. 371, 396, 63 S.Ct. 636, 649, 87 L.Ed. 843 (1943). It "is no more than an aid in statutory construction." Helvering v. Reynolds, 313 U.S. 428, 432, 61 S.Ct. 971, 973, 85 L.Ed. 1438 (1941); and that "[R]e-enactment * * * is an unreliable indicium at best." Commissioner v. Glenshaw Glass Co., 348 U.S. 426, 431, 75 S.Ct. 473, 477, 99 L.Ed. 483 (1955).

The theory underlying this doctrine is that Congress when re-enacting a statute is aware of existing regulations and would, therefore, change the wording of

a statute if it intended to eliminate the regulations. Judge Learned Hand in discussing this theory said, "To suppose that Congress must particularly correct each mistaken construction under the penalty of incorporating it into the fabric of the statute appears to us unwarranted; our fiscal legislation is detailed and specific enough already." F. W. Woolworth Co. v. United States, 91 F.2d 973, 976 (2d Cir.1937), cert. denied, 302 U.S. 768, 58 S.Ct. 479, 82 L.Ed. 597 (1938).

If the application of the re-enactment doctrine gave interpretive regulations the force of law without reservation, administrative agencies would lose their power to change previously promulgated rules either retroactively or prospectively.

Section 1.162 of the Treasury regulations under the 1954 Code, 26 C.F.R. § 1.162, promulgated in 1958 contains no counterpart to section 39.23(a)--9 of the 1939 Code regulation. However, section 404 of the 1954 Code, 26 U.S.C. 1958 ed. § 404, and the regulation, adopted in 1956, under this section are pertinent to the question before us. Section 404(a) of the 1954 Code is derived from section 23(p) of the 1939 Code. Subsections (1), (2), (3), and (4) of section 404(a) are not applicable; but subsection (5)[6] is significant as is section 1.404(a)–12 of the 1954 regulations.[7]

5. "§ 7805. Rules and regulations
"(b) *Retroactivity of regulations or rulings.*—The Secretary or his delegate may prescribe the extent, if any, to which any ruling or regulation, relating to the internal revenue laws, shall be applied without retroactive effect."

6. "§ 404. Deduction for contributions of an employer to an employees' trust or annuity plan and compensation under a deferred-payment plan
"(a) *General rule.*—If contributions are paid by an employer to or under a stock bonus, pension, profit-sharing, or annuity plan, or if compensation is paid or accrued on account of any employee under a plan deferring the receipt of such compensation, such contributions or compensation shall be deductible under section 162 (relating to trade or business expenses) or section 212 (relating to expenses for the production of in-

come) but if they satisfy the conditions of either of such section, they shall be deductible under this section, subject, however, to the following limitations as to the amount deductible in any year: * * *
"(5) Other plans.—In the taxable year when paid, if the plan is not one included in paragraph (1), (2), or (3), if the employees' rights to or derived from such employer's contribution or such compensation are nonforfeitable at the time the contribution or compensation is paid."

7. "Sec. 1.404(a)–12. *Contributions of an employer under a plan that does not meet the requirements of section 401 (a); application of section 404(a) (5).*
"Section 404(a) (5) covers all cases for which deductions are allowable under section 404(a) but not allowable under paragraph (1), (2), (3), (4), or (7)

■ We agree with Judge Bruce in his concurring opinion in Barbourville Brick Co., 37 T.C. 7, 16 (1961), "[I]n final analysis, the question to be determined * * * is whether the payments in question satisfy the conditions of section 162, as required by section 404(a)." It follows that taxpayer had the burden of proving that the payment to Mrs. Stone was an ordinary and necessary business expense in accordance with section 162—without the benefit of any interpretive regulation such as § 39.23(a) (1) (A).

## II.

■ The Tax Court found that the $30,000 payment was ordinary but not necessary. It ruled that a corporate expenditure may be necessary if it is appropriate and helpful; and that to prove this, the taxpayer must demonstrate that the payment was intended to result in the inurement of a business benefit. We are satisfied that this is the correct criterion.

■ The court further held that the taxpayer had offered insufficient proof that the payment was prompted by business considerations or that it represented additional compensation for the past services of the deceased president of the company.

The evidence supports this holding. The corporate resolution is not indicative of any employee incentive plan or that widows of other employees of taxpayer would be similarly treated. Director Welser testified that the directors discussed "some type of monument that could be built to the memory of Mr. Stone for the splendid work he had done with Interstate Drop Forge"; he then added, "and also, I think, to act as an example for other outstanding employees who had made similar accomplishments in the future." No reasonable inference can be drawn that this suggested additional reason for the payment, as expressed by Welser, represented the combined view of the company's directors. The strongest evidence is the characterization given the payment in the resolution itself, namely, "this payment is considered a gratuity."

The Tax Court heard all material evidence relevant to the factual issue. It was in a position to evaluate Welser's testimony in the light of the other evidence and was not bound to give it credence.

■ It is well settled that a finding by the Tax Court must stand unless it is clearly erroneous. Commissioner v. Duberstein, 363 U.S. 278, 291, 80 S.Ct. 1190, 4 L.Ed.2d 1218 (1960). Upon a consideration of the record, the only conclusion we can arrive at is that the finding made in the instant case was not erroneous.

The decision of the Tax Court is affirmed.

of such section. No deduction is allowable under section 404(a) (5) for any contribution paid or accrued by an employer under a stock bonus, pension, profit-sharing, or annuity plan, or for any compensation paid or accrued on account of any employee under a plan deferring the receipt of such compensation, except in the year when paid, and then only to the extent allowable under section 404(a). See § 1.404(a)–1. If payments are made under such a plan and the amounts are not deductible under the other paragraphs of section 404(a), they are deductible under paragraph (5) of such subsection to the extent that the rights of individual employees to, or derived from, such employer's contribution or such compensation are nonforfeitable at the time the contribution or compensation is paid. If unfunded pensions are paid directly to former employees, their rights to such payments are nonforfeitable, and accordingly, such amounts are deductible under section 404(a) (5) when paid. *Similarly, if amounts are paid as a death benefit to the beneficiaries of an employee (for example by continuing his salary for a reasonable period), and if such amounts meet the requirements of section 162 or 212, such amounts are deductible under section 404(a) (5) in any case when they are not deductible under the other paragraphs of section 404(a)."* (Emphasis added.)