REPUBLIC ENGINEERS, INC., PETITIONER *v*. COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 1205–69.    Filed March 31, 1970.

*Robert F. Ashley*, for the petitioner.
*D. Ronald Morello*, for the respondent.

#### OPINION

QUEALY, *Judge*: Respondent determined a deficiency in income tax of petitioner for the taxable year September 10, 1965, to June 30, 1966, in the amount of $618.41. The sole issue for decision relates to the deductibility of a payment of $2,000 made to the widow of a former officer of Utilities Engineering & Management Co. The petitioner acquired the assets and liabilities of that company.

The respondent contends that the payment in question did not constitute an ordinary and necessary business expense of the petitioner, and that its deductibility as a gift is limited to $25 under the provisions of section 274(b).[1]

The facts have been stipulated. The stipulation of facts and exhibits thereto are incorporated herein by this reference.

Petitioner is a corporation organized under the laws of Texas with its offices and principal place of business, at the time of filing the petition herein, at 5630 Yale Boulevard, Dallas, Tex. The income tax return for the period ending June 30, 1966, was filed with the district director of internal revenue, Dallas, Tex.

---

[1] All statutory references are to the Internal Revenue Code of 1954, as amended, unless otherwise indicated.

Mr. Virgil A. Pendleton and Mrs. Hester A. Pendleton, husband and wife, owned all of the stock of Utilities Engineering & Management Co. (hereinafter referred to as Utilities), an Oklahoma corporation. Mr. Pendleton died on May 17, 1965. During the taxable year ending June 30, 1965, he received a salary as president and sole employee of Utilities in the amount of $5,763.91.

Prior to the death of Mr. Pendleton, Utilities was engaged in a joint venture with Homer A. Hunter & Associates, Inc., a Texas corporation. All of the stock of that corporation was owned by Homer A. Hunter and R. Frederick Hunter. As of June 30, 1965, Utilities was indebted to that corporation in the amount of $7,500. The liabilities of Utilities per books exceeded its assets by $1,483.10.

The petitioner was organized on August 17, 1965, by Homer A. Hunter and R. Frederick Hunter. On August 26, 1965, acting on behalf of herself and as administratrix of her deceased husband's estate, Mrs. Pendleton sold all of the stock of Utilities to the Hunters. The Hunters thereupon transferred the stock of Utilities to the petitioner in exchange for its stock. On September 10, 1965, the stock of Utilities was surrendered by the petitioner in exchange for all of its assets and the assumption of its liabilities. Utilities was formally dissolved on June 6, 1966.

On June 15, 1966, the directors of petitioner duly adopted the following resolution:

On motion duly made and seconded, a widow's death gift allowance in the amount of $2,000.00 was declared in favor of Mrs. Hester A. Pendleton, surving [sic] wife of V. A. Pendleton who died May 17, 1965 while he was President and active employee of Utilities Engineering and Management Co., and [sic] Oklahoma Corporation.

In its income tax return for the taxable year ended June 30, 1965, Utilities reported a loss of $18,471.50. In its return for the taxable period ended June 30, 1966, the petitioner reported taxable income of $23,686.21, after deducting officers' salary of $6,000 and the "widow's gift" of $2,000.

The deductibility of payments to the surviving spouse of a deceased officer or employee has long been recognized. Under earlier regulations, the only limitation related to the period of time during which such payments might continue. Sec. 29.23(a)–9, Regs. 111. Subsequently, and undoubtedly partly as a result of decisions by this Court, the "limited period" in earlier regulations was redefined to be construed as a measure of the reasonableness of the payments rather than as a time limitation. Rev. Rul. 54–625, 1954–2 C.B. 85, as modified by Rev. Rul. 55–212, 1955–1 C.B. 299. Currently, the

deductibility of such payments is provided for in regulations section 1.404(a)–12, wherein it is stated:

If unfunded pensions are paid directly to former employees, their rights to such payments are nonforfeitable, and accordingly, such amounts are deductible under section 404(a)(5) when paid. Similarly, if amounts are paid as a death benefit to the beneficiaries of an employee (for example, by continuing his salary for a reasonable period), and if such amounts meet the requirements of section 162 or 212, such amounts are deductible under section 404(a)(5) in any case when they are not deductible under the other paragraphs of section 404(a). * * *

At the outset, therefore, the Court is called upon to decide whether the payment was "an ordinary and necessary" expense within the meaning of section 162.

The respondent does not claim that the amount paid ($2,000) when coupled with the prior compensation ($5,763.91) of the decedent for the fiscal year ended June 30, 1965, was unreasonable in amount. The main thrust of the respondent's argument relates to the fact that Mrs. Pendleton, acting on her own behalf and as administratrix of her husband's estate, sold all interest in Utilities to the Hunters. The Hunters thereupon caused the business to be transferred to the petitioner. Because of these transactions, the respondent argues that there was no legal or moral obligation on the part of the petitioner to make the payment.

As a matter of law, the sale of the stock followed by the organization of the petitioner would not serve to disqualify the payment as a deduction under section 162. The sale of the stock standing alone did not affect the employment relationship of the decedent.

As a second step, the stock of Utilities was transferred to the petitioner in exchange for petitioner's stock and petitioner thereupon acquired the assets and liabilities of Utilities in exchange for its stock. Whether the transaction resulted in a liquidation under sections 332 and 334(b)(1) or a "reorganization" as defined in section 368(b)(1) is immaterial. The petitioner thereby became the successor corporation and stood in the shoes of Utilities (sec. 381). Since it was the petitioner, and not the shell of the former corporation (Utilities), that derived the benefit of the prior services of the decedent, it would only be proper that any payment to the decedent's widow should be made by the petitioner. It does not necessarily follow, however, that *factually* such a payment constituted an ordinary and necessary business expense within the meaning of section 162.

Prior to the change in the regulations following the enactment of the Internal Revenue Code of 1954, if the payment to a survivor of a deceased employee was reasonable in amount and there

was no relationship from which it might be inferred that the payment resulted from any other consideration except the fact of employment, it was assumed as a matter of practice that the payment met the business-purpose test. Sec. 29.23(a)–9, Regs. 111; Rev. Rul. 54–625; Rev. Rul. 55–212.

In view of the change in the regulations under the 1954 Code, the taxpayer may no longer rely on this rule. The taxpayer must affirmatively prove that the payment was intended to serve a business purpose. *Interstate Drop Forge Co.* v. *Commissioner*, 326 F. 2d 743 (C.A. 7, 1964), affirming a Memorandum Opinion of this Court.

In the instant case, the petitioner has failed to sustain that burden. The fact that the payment was reasonable in amount is not sufficient. While there was no stockholder relationship between the payee and the petitioner, it does not necessarily follow that the payment represented additional compensation. For example, no evidence was presented to negative the inference that the payment might have been made on account of the sale by the widow of the stock of the predecessor company for a nominal consideration.

In the alternative, the respondent contends that the payment, if otherwise allowable, is subject to the limitation of $25 on account of business gifts in section 274(b)(1). Since the Court has held that the petitioner failed to establish the payment was an ordinary and necessary business expense within the meaning of section 162, no amount is deductible. It becomes unnecessary to consider the applicability of section 274(b)(1).

*Decision will be entered for the respondent.*