**BANK OF PALM BEACH & TRUST COMPANY** and Marie E. Bardsley, Executors of the Will of Chester T. Bardsley and Marie Bardsley, et al.

v.

The **UNITED STATES.**

No. 308–69.

United States Court of Claims.

April 13, 1973.

Elliott Manning, New York City, attorney of record, for plaintiffs.

Richard D. Silvester, Tax Div., U. S. Dept. of Justice, Washington, D. C., with whom was Asst. Atty. Gen., Scott P. Crampton, for defendant. Gilbert E. Andrews and Theodore D. Peyser, Jr., Washington, D. C., of counsel.

## 1344

Before COWEN, Chief Judge, and DAVIS, SKELTON, NICHOLS, KASHIWA, KUNZIG and BENNETT, Judges.

## OPINION

KASHIWA, Judge.[*]

Plaintiffs are taxpayers who claim refunds of federal income taxes paid by them with respect to the calendar year 1960, plus statutory interest. They were all partners, or bear some relationship to individuals who were partners, of Salomon Bros. & Hutzler (hereinafter referred to as "Salomon"), a Wall Street brokerage firm, during Salomon's fiscal year ending September 30, 1960.

Salomon made payments aggregating $60,130.84 to the widow of Sydney J. Carter, the latter being an employee who died on March 1, 1960. Salomon deducted said payments on its Form 1065 for the fiscal year 1960. The deductions were disallowed by the Government on the returns of the various plaintiffs who, after paying their respective assessments, filed their timely petition in this court. We hold for the plaintiffs for reasons hereinafter stated.

At issue is the deductibility by the partnership of said payments totaling $60,130.84 made during its fiscal year ending September 30, 1960, to Mrs. Dorothy T. Carter, widow of a deceased employee, Sydney J. Carter. Mr. Carter had been employed by Salomon since 1922, and, at the time of his death, was serving as the head of the firm's institutional contract department. For some years prior to his death Mr. Carter had been one of Salomon's so-called "percentage men." Percentage men are employees who earn a specified salary plus a share of the profits. During Salomon's fiscal year ending September 30, 1960, Mr. Carter's salary was $15,000 per year plus .55 percent of the firm's net profits. Mr. Carter's compensation for the three years prior to the year of his death was as follows:

| Fiscal year ending September 30 | Salary | Share of profits | Total compensation |
|---|---|---|---|
| 1959 .......... | $14,000 | $16,026.94 | $30,026.94 |
| 1958 .......... | 14,000 | 47,500.17 | 61,500.17 |
| 1957 .......... | 13,000 | 5,907.00 | 18,907.00 |

Shortly after Mr. Carter's death on March 1, 1960, Salomon's administrative committee made a decision to pay to his widow the amounts that would have been paid to him as salary and a share of the profits if he had lived until the end of the fiscal year ending September 30, 1960. The salary continuation checks paid to Mrs. Carter began on March 22, 1960, and continued until September 30, 1960. Their total amount was $8,653.80. On September 30, 1960, the firm sent Mrs. Carter two checks in the total amount of $51,477.04, representing the share of the firm's profits or bonus fund to which Mr. Carter would have been entitled had he survived to that date. Salomon filed a Form 1099 with resect to the bonus fund payments made to Mrs. Carter, declaring the amount paid to be "Salaries, Fees, Commissions, or Other Compensation." Salomon did not file either a Form 1099 or a Form W–2 with respect to the salary continuation payments made to Mrs. Carter. These payments were reflected in the journal entries to a miscellaneous and sundry items expense account. No employment taxes were withheld from either the bonus fund or the salary continuation payments.

Before discussing the merits of this case, it is proper that we consider the effect, if any, of the recent decision of the United States Court of Appeals, Second Circuit, in Estate of Carter v. Commissioner of Internal Revenue, 453 F.2d 61 (2d Cir. 1971), rev'g 29 CCH TCM 1407 (1970). Estate of Carter basically involved the wife's side of the identical transaction between Salomon and Mrs. Carter which we have before us. The

---

[*] This opinion contains all the essential findings of fact which the parties have stipulated pursuant to Rule 134(b)(2) of the Rules of this court.

Second Circuit, in a two-to-one decision, held that the payments received by Mrs. Carter were excludable from her income under the provisions of section 102(a) [1] of the Internal Revenue Code of 1954, as amended.[2]

■ It is our view that the law is clear that the fact that the Court of Appeals has permitted Mrs. Carter to treat the payments in question as a gift is not determinative for purposes of the present case since the authorities recognize that, at least prior to the passage of section 274(b) of the Code, a payment might be excludable by the recipient and nevertheless deductible by the employer. See, e. g., Fifth Avenue Coach Lines, Inc., 31 T.C. 1080, 1093–1094 (1959), rev'd on other issues 281 F.2d 556 (2d Cir. 1960); Weyenberg Shoe Mfg. Co., 23 CCH TCM 1997, 2003 (1964).

In the hallmark case of Commissioner v. Duberstein, 363 U.S. 278, 80 S.Ct. 1190, 4 L.Ed.2d 1218 (1960), the Supreme Court stated:

> * * * The taxing statute does not make nondeductibility by the transferor a condition on the "gift" exclusion; * * *.

Specifically, the trier of fact must be careful not to allow trial of the issue whether the receipt of a specific payment is a gift to turn into a trial of the tax liability, or of the proprie-ty, as a matter of fiduciary or corporate law, attaching to the conduct of someone else. The major corollary to the Government's suggested "test" is that, as an ordinary matter, a payment by a corporation cannot be a gift, and, more specifically, there can be no such thing as a "gift" made by a corporation which would allow it to take a deduction for an ordinary and necessary business expense. * * * [W]e find no basis for such a conclusion in the statute; * * *. [363 U.S. at 287–288, 80 S.Ct. at 1198.] [Emphasis supplied.]

In fact, the Court of Appeals, itself, in *Estate of Carter,* was careful to point out that the question of whether the payments were a gift to the recipient was not determinative on the question of whether the payments could be deducted by the employer. 453 F.2d 69, n. 14, and 70.

Since symmetry of treatment with respect to the recipient and the payor is not required, it may appear that the defendant is being "whipsawed" in those situations in which the widow(er) is entitled to exclude the payments as gifts while the company is allowed to deduct the very same payments. The passage of section 274(b) [3] in 1962 prevents any such whipsaw in the future, at least in cases in which the item was excludable by the widow(er) only on the basis of section 102. In fact, the very passage

---

1. "Sec. 102. *Gifts and inheritances.*
"(a) *General rule.*
"Gross income does not include the value of property acquired by gift, bequest, devise, or inheritance."

2. Unless otherwise stated, all references to statutory provisions of the tax law are to the Internal Revenue Code of 1954, as amended.

3. "Sec. 274. *Disallowance of certain entertainment, etc., expenses.*
   *    *    *    *    *
"(b) *Gifts.*
"(1) Limitation. No deduction shall be allowed under section 162 or section 212 for any expense for gifts made directly or indirectly to any individual to the extent that such expense, when added to prior expenses of the taxpayer for gifts made to such individual during the same taxable year, exceeds $25. For purposes of this section, the term "gift" means any item excludable from gross income of the recipient under section 102 which is not excludable from his gross income under any other provision of this chapter, but such term does not include—
   *    *    *    *    *
"(2) Special rules.
"(A) In the case of a gift by a partnership, the limitation contained in paragraph (1) shall apply to the partnership as well as to each member thereof.
"(B) For purposes of paragraph (1), a husband and wife shall be treated as one taxpayer."

of section 274(b) indicates that prior to its enactment the fact that payments by an employer might be considered to be a gift to the recipient did not necessarily mean that the employer could not deduct the payment from income under section 162(a). Section 274(b) limits the deduction which a business may take for gifts in any taxable year to $25 per donee. The term "gift" is defined to include any "item excludable from gross income of the recipient under section 102. * * *" It appears clear that the provision was added, at least in part, to reverse the line of cases prior to its passage which permitted the recipient to treat the payments as gifts and the employer to deduct the payments as "ordinary and necessary expenses." [4] Section 274(b) is, of course, inapplicable to the instant case since the payments were made to Mrs. Carter in 1960.

■ This case involves simply the deductibility by a business partnership of payments made, without legal obligation, to the widow of a deceased key employee who was not related by blood or marriage to any member of the firm. It is our view that the amount in issue is deductible pursuant to section 162[5] since the dominant motivation prompting the payments was a business motivation. See also section 404(a).[6] The aspects of this dominant business motivation include the award of additional compensation as well as a general policy directed toward the increased morale of similarly situated employees. This basic, motivational test has been described by the United States Supreme Court in Com-

---

4. In the Technical Explanation to the House bill, the following appears:

"Any item which is excludable from gross income under a provision of chapter 1 of the code other than section 102 is not a "gift" within the meaning of subsection (b)(1). To illustrate the applicability of subsection (b)(1), a payment by an employer to a deceased employee's widow which is excludable from her income by reason of the gift exclusion provision, section 102, will not be deductible by the employer in excess of $25, whereas the treatment by an employer of a payment to a deceased employee's widow which constitutes an employee's death benefit excludable by the recipient under section 101(b) of the code will not be affected by this provision. * * *" [H.R.Rep.No. 1447, 87th Cong., 2d Sess., p. A31 (1962–3 Cum.Bull., p. 529).]

The Senate Report Technical Explanation contains similar language:

"Any item which is excludable from gross income under a provision of chapter 1 of the code other than section 102 is not a "gift" within the meaning of subsection (b)(1). To illustrate the applicability of subsection (b)(1), a payment by an employer to a deceased employee's widow which is excludable from her income by reason of the gift exclusion provision, section 102, will not be deductible by the employer in excess of $25, whereas the treatment by an employer of a payment to a deceased employee's widow which is not a gift but which constitutes an employee's death benefit excludable by the recipient under section 101(b) of the code will not be affected by this provision. * * *"

[S.Rep.No.1881, 87th Cong., 2d Sess., p. 170 (1962–3 Cum.Bull., p. 874).]

5. "Sec. 162. *Trade or business expenses.*
"(a) *In general.*
"There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including—
"(1) a reasonable allowance for salaries or other compensation for personal services actually rendered;"
The Government has conceded that the payment satisfied the "ordinary" requirement of section 162 and makes its stand on the "necessary" requirement. The United States Supreme Court has held that an expenditure is "necessary" if it is "appropriate and helpful" to the business. Commissioner v. Heininger, 320 U.S. 467, 471, 64 S.Ct. 249, 88 L.Ed. 171 (1943).

6. The plaintiffs have noted that applicability of the section 404(a)(5) deferred compensation plan. However, both plaintiffs and defendant agree that to be deductible under section 404(a) and Treas.Reg. § 1.404(a)–12, the expense must still satisfy the "ordinary and necessary" requirement of section 162. The problem in this case is not whether the payments have the effect of a "plan"; nor is the problem one of "timing," since the payments were made during the same year that the nonforfeitable right of the beneficiary to the payments arose. Rather, in light of the Government's concession that the payments were "ordinary," the case can be disposed of upon a showing that the payments were "necessary."

missioner v. Duberstein, *supra,* in the following language:

* * * We take it that the proper criterion, established by decision here, is one that inquires what the basic reason for his conduct was in fact— the dominant reason that explains his action in making the transfer. * * * [363 U.S. at 286, 80 S.Ct. at 1197.]

* * * For the Court has shown that the mere absence of a legal or moral obligation to make such a payment does not establish that it is a gift. Old Colony Trust Co. v. Commissioner, 279 U.S. 716, 730 [49 S.Ct. 499, 504, 73 L.Ed. 918]. And, importantly, if the payment proceeds primarily from "the constraining force of any moral or legal duty," or from "the incentive of anticipated benefit" of an economic nature, Bogardus v. Commissioner, 302 U.S. 34, 41 [58 S. Ct. 61, 65, 82 L.Ed. 32], it is not a gift. And, conversely, "[w]here the payment is in return for services rendered, it is irrelevant that the donor derives no economic benefit from it." Robertson v. United States, 343 U.S. 711, 714 [72 S.Ct. 994, 996, 96 L.Ed. 1237]. A gift in the statutory sense, on the other hand, proceeds from a "detached and disinterested generosity," Commissioner v. LoBue, 351 U.S. 243, 246 [76 S.Ct. 800, 803, 100 L.Ed. 1142]; "out of affection, respect, admiration, charity or like impulses." Robertson v. United States, *supra,* at 714 [72 S.Ct. 994]. * * * [Footnote omitted.] [363 U.S. at 285, 80 S.Ct. at 1196.]

With respect to whether the expenditures constitute additional compensation,

the parties have spent considerable effort analyzing the holding of *Fifth Avenue Coach Lines, Inc., supra,* a leading case with respect to the issue of the deductibility by an employer of death benefit payments made to the family of a deceased employee. In that case, the payments were made to the widow over a period of ten years and amounted to approximately $90,000. The court found that the payments made to the

* * * widow were intended in part as additional compensation for past services rendered * * *, in part to show gratitude for such past services, and in part to aid in the support of * * * [the deceased's] widow. [31 T.C. at 1094.]

The court held that these mixed motives would support the deduction of the payments by the employer under section 23 of the 1939 Code providing for the deduction of "ordinary and necessary expenses." The "ordinary and necessary expenses" deduction was re-enacted in a substantially similar form as section 162(a) of the 1954 Code. The Tax Court noted, in the alternative, that

* * * [T]o be deductible, the payments need not be in the nature of additional compensation. * * * [31 T.C. at 1096.]

■ The Government appears to argue that for a payment to be considered as additional compensation, the facts of the case must disclose that the deceased was seriously undercompensated during his years with the company, as was the situation in *Fifth Avenue Coach Lines, Inc.* We disagree with the Government's analysis. If the amount paid to the widow is not, in reality, a disguised gift or dividend,[7] and if the

---

7. We note, in passing, that the Government has relied on many cases in which the issue was whether the payments constituted a dividend. Since Mr. Carter was an employee of Salomon and not a partner, and since Mrs. Carter was not even an employee during any recent period, the analogy to the "dividend" cases is greatly weakened.

If the deceased was a major or controlling stockholder in the company, payments by the company to the widows of such controlling persons could hardly have any appearance of being an arm's-length business transaction. In certain of these cases, the death benefit payments have been held to be constructive dividends. See, e. g., Lengsfield v. Commissioner, 241

additional compensation is not unreasonable, the company is free to review its history with respect to the deceased employee and conclude that additional compensation is warranted. There is no one salary immutably indicated for a business position. Reasonable parameters for salary payments are especially indicated when the employee is to a large extent rewarded under a contingency based on profit. Cases which have held that the company was paying additional compensation when no significant undercompensation for previous years was established include J. Aron and Co., Inc., 22 CCH TCM 788 (1963); John B. Canepa Co., 22 CCH TCM 1770 (1963); Oppenheimer Casing Co., 22 CCH TCM 1082 (1963). The payments were made with respect to Mr. Carter's past services and not Mrs. Carter's present needs.

We find that additional compensation treatment is even more clearly warranted with respect to those amounts which, by means of moral obligation, had "accrued" to the deceased's bonus account.

While, of course, it is true that the company was not legally obligated to pay any bonus if the percentage man was not actually employed by the company at the end of the fiscal year, Mr. Carter had nonetheless lived through five months of the fiscal year and the bonus allocable to this period was $21,449. Had he lived to the end of the year, this amount plus the remainder of the bonus would have vested.

■ We find further confirmation for our view that the $60,130.84 in payments constitute additional compensation by an analysis of the treatment of the payments by Salomon itself. While it is true that a party cannot change the basic nature of a payment by calling it what it is not, it is also true that the action of the petitioner is relevant in determining intent. The intent of Salomon, the party making the payment, is of central importance. Commissioner v. Duberstein, *supra*. In a letter dated February 1, 1961, set out below,[8] sent by Salomon to Nathan Berkman & Compa-

---

F.2d 508 (5th Cir. 1957); Barbourville Brick Co., 37 T.C. 7 (1961).

In other cases involving close corporations and decedents who were majority stockholders, deductions of death payments made to their families have been disallowed on the grounds that the payments were not "ordinary and necessary expenses." See, e. g., Interstate Drop Forge Co., 22 CCH TCM 701 (1963). See also Vesuvius Crucible Co., 24 CCH TCM 750 (1965). Clearly, however, there is strong reason to find payments not to be "ordinary and necessary expenses" when they are made by a close corporation only to the families of deceased officers and directors, who also happen to be major stockholders. In the *Fifth Avenue Coach Lines* case, for example, the court stated:

" * * * neither [deceased] nor his widow were stockholders * * * and the rule of close scrutiny * * * is not applicable here. * * * " [31 T.C. at 1093.] For other cases in which deduction was disallowed, and the deceased had been a principal stockholder, see, e. g., Allen Industries Inc. v. Commissioner, 414 F.2d 983 (6th Cir. 1969); Loewy Drug Co. v. United States, 356 F.2d 928 (4th Cir. 1966); Schner-Block Co. v. Commissioner, 329 F.2d 875 (2d Cir. 1964);

Republic Engineers, Inc., 54 T.C. 702 (1970).

8. "In connection with the preparation of Dorothy T. Canter's [Mr. and Mrs. Carter were also known as "Canter"] Federal income tax return for 1960, you have asked us to furnish you with the basis upon which we made two payments of $21,-448.76 and $30,028.28 to her.

"Mrs. Canter's husband had been an employee of this firm for many years. He died on March 1, 1960. After a review of his employment contract, we concluded that there was no obligation to make any post-mortem payments to Mr. Carter's estate or to his widow.

"Mr. Canter had worked for us for many years and we held him in the highest personal regard. Accordingly, the partners determined to give some tangible expression to that feeling by making the above payments in his honor to his widow.

"This firm does not have any established policy or plan for making payments to the widows of contract employees such as Mr. Carter. As a matter of fact, Mr. Canter's death presented us for the first time with this situation."

The postcript of this letter provided:

"We have filed form 1099 showing the above figures and sent copy to Mrs. Canter."

ny, Mrs. Carter's accountants, we note that Salomon informed Berkman that Salomon viewed the bonus payments from its own tax standpoint as additional compensation. This is made clear by the fact that a Form 1099 was filed. On the Form 1099 the bonus payment aspect of the payments made to Mrs. Carter were designated under the heading of "Salaries, Fees, Commissions, or Other Compensation."

While the body of this letter contains phrasing which, if read in isolation, might indicate a donative intent,[9] we deem the letter of very limited probative value [10] for the same reason the Tax Court expressed in the trial of the widow's side of this transaction:

> While the statement of the partner at the meeting and the letter drafted subsequent to the meeting warrant our consideration, we consider these factors to be of only slight probative value in establishing the intent of the firm at the time the decision to make the payments to Mrs. Carter was reached by the committee. The statements of the partner were made and the letter was written after the decision to make the payments had been made and implemented and at a time when the income tax consequences of the payments were being considered by Mrs. Carter (and her accountants) who had a strong interest in having the payments classified as a gift. In these circumstances we cannot attach more than a slight weight to the statements of the partner and the letter as indicative of the firm's intention to make a gift.

\* \* \* \* \* \*

\* \* \* While expressions of sorrow and high regard mitigate language which characterizes payments as compensation, it is not inconsistent to express sorrow and at the same time to pay additional compensation. \* \* \* [Estate of Sydney J. Carter, 29 CCH TCM 1407, 1411–1412 (1970).]

Another aspect of the dominant business motivation prompting the payments was the desire by Salomon to secure a legitimate business benefit, an increase in employee morale. Because of the fact that Mr. Carter was the first of the percentage men to die while in the employ of Salomon, petitioners' evidence has necessarily been directed to the company's response to the subsequent deaths of six other percentage men. While evidence of this type is not conclusive, it provides an indication of intent in an area where formal plans do not always exist. The parties have stipulated that

> 31. The Administrative Committee, in authorizing the payments was also motivated by a desire to boost employee morale, which it was hoped would result from the other employees' awareness of the payments to Mrs. Carter. Carter was very popular with the employees of Salomon and it was thought by some of the members of the Administrative committee that if some form of recognition payments were made to Mrs. Carter, the other employees would be pleased. \* \* \*

The facts as stipulated go on to state that while no formal announcement was made of this decision, as a consequence

---

9. The Government in the instant case seeks to make much of the fact that the representatives of Salomon "hoped" that Carter's widow would receive "gift" treatment. The point which the Government has failed to appreciate in this case is that Salomon did not consider that "gift" treatment to Mrs. Carter was inconsistent with its own "deduction" claim. Certainly, the state of the law was that there was no necessary inconsistency. In addition, Salomon had been advised by counsel that the letter written to the accounting firm, *supra*, footnote 8, would not jeopardize its right to the deduction.

10. In Plastic Binding Corp., 26 CCH TCM 687, 690–691 (1967), it was said:

"In ascertaining the dominant motive, we must carefully examine all the surrounding circumstances, including the statements of the parties at the time the payments were made. Though we must give proper weight to such statements, we must also recognize that the parties have engaged in some 'window dressing', and we must look through the window and find out what was behind it. \* \* \*" [Footnote omitted.]

of the "office grapevine" the facts with respect to the payments became generally known to Salomon's other percentage men.

As further indication that the business benefit of increased morale was contemplated by the taxpayer, the stipulation reveals that since Carter's death, six percentage men have died. Except for two cases, the families of each have received payments equal to a continuation of the deceased's salary for the remainder of the fiscal year in which he died and an additional amount equal to the deceased's share of profits for the fiscal year from the firm's bonus fund. The two exceptional instances involved situations in which the deceased died toward the very beginning of the fiscal year, and in one of these two cases a payment of $5,000 was made. The bonus (not including continuation of salary) for each of the four cases in which percentage men died at a time other than the very beginning of the fiscal year amounted to $102,779.99, $98,337.-61, $32,934.49, and $19,760.69. The measurement in each of these four cases was the amount the employee would have received had he lived until the end of the company's fiscal year.

The payments made to Mrs. Carter were computed in precisely the same manner and there is no indication that her general circumstances, if in fact she was in a less secure financial position, were taken into account. Normally, the financial condition of the family of the deceased percentage man is not investigated by Salomon. The partners in our case were generally aware of Mrs. Carter's financial condition, including the fact that she was entitled to the sum of $52,337.68 as a distribution from the firm's profit-sharing plan. This latter amount was paid to Mrs. Carter, as the named beneficiary, by check enclosed in a letter dated September 29, 1960. However, there has been no showing by the Government that the payments made to Mrs. Carter were in response to her financial condition. In fact, other than what was generally known by the partners about Mr. and Mrs. Carter, there

was no specific inquiry made into her financial affairs before (or after) the payments were made. This failure has been deemed significant, on the recipient's side of the issue, in several cases. Fritzel v. United States, 339 F.2d 995 (7th Cir. 1964); Cronheim's Estate v. Commissioner, 323 F.2d 706 (8th Cir. 1963); Roy I. Martin, 36 T.C. 556 (1961), aff'd 305 F.2d 290 (3d Cir. 1962), cert. denied, 371 U.S. 904, 83 S. Ct. 209, 9 L.Ed.2d 165 (1962); Margaret H. D. Penick, 37 T.C. 999 (1962).

While the company did not adopt an ironclad policy as to the automatic consequences on the death of a percentage man, it is clear that, in general, a post-death payment was contemplated as a means of increasing employee morale. Although Salomon did not legally obligate itself to make such payments, or consider the payments to Mrs. Carter as a binding and immutable precedent to be followed upon the death of all other percentage men, this does not alter the fact that the general policy, to which the Government has, in effect, stipulated, did exist. In addition, the fact that Salomon would probably not have made the payments if Mr. Carter were not survived by a wife and son is not crucial in determining whether Salomon was generally pursuing a policy of increasing employee morale. The employee in such cases is, typically, most concerned with his surviving wife and children. An employee without such dependents would more likely be far less concerned with whether, say, an estate, the distributees of which are composed of third cousins, is adequately funded. Thus, a more flexible policy is clearly sensible with respect to increasing employee morale.

While this case, as in all the death benefit cases we have researched, contains a multiplicity of motives—some favoring gift treatment, others favoring business treatment—we conclude that the totality of factors indicate that Salomon's dominant motive in continuing the salary and bonus payments through the end of the fiscal year was proximately related to business. The payments were additional compensation and made to in-

crease employee morale. The payments were made on the basis of Mr. Carter's having survived to the end of the fiscal year during which he died, a fairly common formulation in these death-benefit cases. We hold that this constitutes a reasonable formulation under section 162, especially since he did not die at the very beginning of the fiscal year.

Accordingly, plaintiffs are entitled to recover and judgment is entered for plaintiffs with the amounts of recovery to be determined pursuant to Rule 131(c).

DAVIS, Judge (concurring in the result):

I join the judgment on the ground that the payments to Mrs. Carter were (at the least) business-motivated gifts, deductible for 1960 under section 162 of the Code. I am satisfied that, if gifts, the amounts paid were, as the court's opinion makes clear, sufficiently colored by business purposes to be deductible by the payor. Because of that conclusion, I need not and do not reach the separate question, discussed in the court's opinion, whether these sums were not gifts at all but additional compensation for Mr. Carter's work.