148

**CHARLES SCHNEIDER & CO., INC.,**
Appellant,

v.

**COMMISSIONER OF INTERNAL
REVENUE, Appellee.**

**FUTURE FOAM, INC., Appellant,**

v.

**COMMISSIONER OF INTERNAL
REVENUE, Appellee.**

**CHARLES, INC., Appellant,**

v.

**COMMISSIONER OF INTERNAL
REVENUE, Appellee.**

**CENTRAL WOODWORKING CO. INC.,**
Appellant,

v.

**COMMISSIONER OF INTERNAL
REVENUE, Appellee.**

**Nos. 73–1798 to 73–1802.**

United States Court of Appeals,
Eighth Circuit.

Submitted May 13, 1974.

Decided July 10, 1974.

Rehearing Denied Aug. 19, 1974.

Joel Davis, Omaha, Neb., for appellants.

Louis A. Bradbury, Atty. Tax Div., Dept. of Justice, Washington D. C., for appellee.

Before JOHNSEN and VAN OOSTERHOUT, Senior Circuit Judges, and TALBOT SMITH, Senior District Judge.*

VAN OOSTERHOUT, Senior Circuit Judge.

The taxpayer corporations in the above-entitled cases, which were consolidated in the Tax Court and here, have taken timely appeals from the decision of the Tax Court determining deficiency income tax liability against Charles Schneider & Co., Inc. (C. S. & Co.), for the taxable years ending June 30, 1966, 1967 and 1968, in the amounts of $23,512.40, $15,333.42 and $21,721.05 respectively, and determining income tax deficiency against Future Foam, Inc., for the taxable years ending August 31, 1966, 1967 and 1968, in the amounts of $18,130.17, $3,475.46 and $7,365.58 respectively. The Tax Court's opinion filed June 18, 1973 is reported at 32 TCM 553 (1973). Decision was entered in accordance with the opinion on August 22, 1973. This appeal followed.

Many issues involved in this litigation have been resolved and are no longer in

---

* TALBOT SMITH, Senior District Judge, Eastern District of Michigan, sitting by designation.

controversy. Taxpayers in their brief challenge the Tax Court's determination that under the facts of this case Charles, Inc., was not entitled to file a consolidated return with its subsidiary Chemical Corporation of America. Such issue was specifically abandoned by taxpayers on oral argument. In any event, the decision of the Tax Court on the issue is entitled to be affirmed on the basis of the Tax Court's opinion.

■ The issue before us is whether taxpayers C. S. & Co. and Future Foam, Inc. , are entitled to ordinary and necessary business expense deductions under § 162(a)(1) I.R.C.1954 for the compensation paid their chief executive officers for the years ending in 1966, 1967 and 1968, in excess of the amount which the Tax Court found to be reasonable compensation for services rendered to the corporations.[1] More specifically, the issue is whether the Tax Court's determination of the amount of executive compensation paid by C. S. & Co. and Future Foam, Inc., which is deductible as a reasonable expense, is clearly erroneous. We hold that the Tax Court's decision is supported by substantial evidence and is not clearly erroneous and affirm the judgment.

The record in this case is long. Much of the evidence is stipulated. Evidence was offered in the Tax Court by both parties. Many exhibits were received in evidence. The pertinent evidence is fairly set out in considerable detail in the Tax Court's opinion. An attempt to set out all of the facts would unduly prolong this opinion. We shall briefly summarize the basic facts. Taxpayers C. S. & Co., Future Foam, Inc., Charles, Inc., and Central Woodworking Co., Inc., are all active in various aspects of the furniture and upholstering manufacturing

business at Council Bluffs, Iowa. Charles Schneider played the principal part in organizing and developing such corporations. His efforts contributed significantly to the successful operation of the corporations. During the tax years here in controversy all of the stock in C. S. & Co., 60% of the stock in Future Foam, Inc., 50% of the stock in Central Woodworking Co., Inc., and possibly all of the stock in Charles, Inc.[2] was owned by Charles Schneider. Schneider, after substantially completing a law school course and serving in World War II, started a furniture and upholstery business about 1946. In 1954 this business was incorporated as C. S. & Co. with Schneider as president and his brother-in-law, Leon Summer, as vice-president. Summer became president in 1963 and assumed active management. Summer had an option to purchase C. S. & Co. stock which he never exercised. Schneider at all times owned all of the corporate stock and maintained an active role in the company's affairs. In 1963 an agreement was entered into providing a basic salary of $351.00 per week for Summer and $230.00 per week for Schneider, plus bonuses to be computed as follows:

*Bonus No. 1.*

If there was sufficient net income Three-fourths of 1% of annual net sales divided equally between Schneider and Summer.

*Bonus No. 2.*

After deductions from net profits for:

(a) Schneider's and Summer's salaries and No. 1 bonuses.

(b) 2% of net sales for retained earnings;

---

1. The Tax Court determined as a deductible business expense all executive compensation paid by Charles, Inc., and Central Woodworking Co., Inc., and such determination is not here challenged.

2. Future Foam held legal title to all of the stock of Charles, Inc. Agreements between Schneider and the minority stockholders of Future Foam provided that the minority stockholders acquired no interest in Charles, Inc. No adjudication of ownership of Charles, Inc., stock is essential for the disposition of this case.

(c) federal income taxes;

(d) state income taxes;
remainder to be divided equally between Schneider and Summer.

The amount of compensation paid by C. S. & Co. based on basic salaries and bonuses No. 1 and No. 2 for the fiscal years ending in 1966, 1967 and 1968 was $65,104.94, $59,052.98 and $65,000.00 to Schneider and $74,414.50, $66,357.95 and $74,089.36 to Summer. Bonus No. 2 provided the major portion of the compensation paid to the executives. It is undisputed that C. S. & Co. has never paid a dividend. With respect to each of the taxable years here involved, the Commissioner disallowed deductions to C. S. & Co. for compensation paid Schneider in excess of $35,000 and for compensation paid Summer in excess of $50,000. The Tax Court found and determined that for each of the years involved salaries paid by C. S. & Co. to Schneider in excess of $40,000 and to Summer in excess of $60,000 would be unreasonable and hence not allowable as a business expense deduction.

Future Foam was organized by Schneider who held all of its stock until 1965 when he sold 20% of the stock to Grassman and a similar amount to Friedman, all pursuant to a stock option. Grassman and Friedman had been with Future Foam since about 1960 and had put in long hours and capable services in building up the company. Grassman played a major part in developing a successful foam which the company manufactured and sold. Friedman was president of the company and Grassman was vice-president. In 1963 an agreement was entered into to pay Schneider a basic salary of $150.00 per week and Grassman and Friedman each $175.00 per week. Additionally, under Bonus No. 1 Friedman and Grassman were to divide ¾ of 1% of net sales. Bonus No. 2 was in substance the same as the C. S. & Co. Bonus No. 2 with division to be made equally among Schneider, Friedman and Grassman.

Pursuant to this arrangement for the fiscal year ending August 31, 1966, Friedman and Grassman each received compensation of $80,176.00 ($61,807.00 of which was based on Bonus No. 2), and Schneider received $45,000.00. Schneider received $45,780.00 in the fiscal year 1967. The Commissioner disallowed Future Foam a deduction for compensation paid Grassman and Friedman in excess of $50,000 during the fiscal year ending August 31, 1966, and compensation paid Schneider for the fiscal years 1966 and 1967 in excess of $35,000.00 per year. The Tax Court raised the allowable deduction for compensation paid Grassman and Friedman to $65,000.00 and raised the allowable deduction for salary paid Schneider to $40,000.00 for the years 1966 and 1967.

Section 162(a)(1) of the Internal Revenue Code of 1954 permits a taxpayer to deduct "a reasonable allowance for salaries or other compensation for personal services actually rendered" as ordinary and necessary business expenses. The determination of what is reasonable compensation is a factual one to be ascertained from all the facts and circumstances of a case, to which the clearly erroneous standard applies. Charles McCandless Tile Serv. v. United States, 191 Ct.Cl. 108, 422 F.2d 1336, 1338 (1970); Pacific Grains, Inc. v. Commissioner, 399 F.2d 603, 605 (9th Cir. 1968). Decisions of the Tax Court are reviewable in the same manner and to the same extent as decisions of the district courts sitting in civil actions without a jury. This court is bound by the factual determinations of the Tax Court unless they are found to be clearly erroneous or are unsupported by substantial evidence upon the record as a whole. 26 U.S.C. § 7482(a); Commissioner v. Duberstein, 363 U.S. 278, 290–291, 80 S. Ct. 1190, 4 L.Ed.2d 1218 (1960); Byrne v. Commissioner, 449 F.2d 759, 760 (8th Cir. 1971); Commissioner v. Riss, 374 F.2d 161, 166 (8th Cir. 1967).

Several factors to be considered in determining reasonableness of compensation have been mentioned by the courts.

Such factors include the employee's qualifications; the nature, extent and scope of the employee's work; the size and complexities of the business; a comparison of salaries paid with the gross income and the net income; the prevailing general economic conditions; comparison of salaries with distributions to stockholders; the prevailing rates of compensation for comparable positions in comparable concerns; the salary policy of the taxpayer as to all employees; and in the case of small corporations with a limited number of officers the amount of compensation paid to the particular employee in previous years. Mayson Mfg. Co. v. Commissioner, 178 F.2d 115, 119 (6th Cir. 1949).

*See also* Hammond Lead Products, Inc. v. Commissioner, 425 F.2d 31, 33 (7th Cir. 1970), quoting 4A Mertens, Law of Federal Income Taxation, § 25.69 at 282 (1966); Irby Constr. Co. v. United States, 154 Ct.Cl. 342, 290 F.2d 824, 826 (1961).

■ In the instant case, the petitioners strenuously advocate that because the compensation paid to their employees was paid pursuant to contingent compensation agreements, the reasonableness of which must be measured by conditions existing at the time of their execution, the compensation must necessarily have been reasonable. Such agreements were incentives to the officers to increase the profits, as shown by the later success of these companies. Thus, the payments were reasonable compensation to reward these executives for the successful operation of their respective companies. Support for their position may be found in the language of the regulations. Treasury Regulation § 1.162–7(a) provides:

\*    \*    \*    \*    \*    \*

(2) The form or method of fixing compensation is not decisive as to deductibility. . . . Generally speaking, if contingent compensation is paid pursuant to a free bargain between the employer and the individual made before the services are rendered, not influenced by any consideration on the part of the employer other than that of securing on fair and advantageous terms the services of the individual, it should be allowed as a deduction even though in the actual working out of the contract it may prove to be greater than the amount which would ordinarily be paid.

(3) . . . The circumstances to be taken into consideration are those existing at the date when the contract for services was made, not those existing at the date when the contract is questioned.

However, Treasury Regulation § 1.162–7(a)(3) limits this by providing that "[i]n any event the allowance for the compensation paid may not exceed what is reasonable under all the circumstances. It is, in general, just to assume that reasonable and true compensation is only such amount as would ordinarily be paid for like services by like enterprises under like circumstances." Thus, even if the conditions of § 1.162–7(a)(2) are met, a fact finder could still find a contingent compensation agreement to be unreasonable under all the facts and circumstances of a particular case; compensation paid pursuant to such an agreement is not inherently reasonable.

Generally speaking, the fact that compensation is based on a contingent compensation agreement, if fixed pursuant to a free bargain, is an element tending to show reasonableness. Bank of Palm Beach v. United States, 476 F.2d 1343, 1348 (Ct.Cl.1973); *Irby Constr., supra,* at 827. However, where the corporation is controlled by the very employees to whom the compensation is paid, special scrutiny must be given to such salaries, for there is a lack of arm's length bargaining as required by Treasury Regulation § 1.162–7(a)(2). *Hammond Products, supra,* at 33; Heil Beauty Supplies, Inc. v. Commissioner, 199 F.2d 193, 194 (8th Cir. 1952); Hampton Co., T. C. Memo 1964–150, 23 CCH Tax Ct. Mem. 899, 902 (June 1, 1964). *Cf.* Miller Box Co. v. United States, 488 F.2d

695, 707 (5th Cir. 1974). In these circumstances payments under these arrangements may be distributions of earnings rather than payments of compensation for services rendered; even if they are reasonable, they would not be deductible. *Irby Constr., supra,* at 827. A bonus-type contract which is reasonable with a non-stockholder employee may be unreasonable if made with a large stockholder, since the incentive of the bonus would presumably not be needed to call forth the stockholder's best efforts. *Id.*; Northlich, Stolley, Inc. v. United States, 177 Ct.Cl. 435, 368 F. 2d 272, 278 (Ct.Cl.1966). *See Hampton Corp., supra,* at 902.

In the instant cases, at the time these agreements were entered into, Schneider was the sole shareholder of C. S. & Co. and Future Foam. No special incentive was necessary to ensure his best efforts, for he would receive the fruits of success through his status as the majority shareholder of each of these companies. As the controlling shareholder and director, any agreement between one of these corporations and him in his status as an employee could not be at arm's length. Summer, while owning no stock, was a member of the board of directors of C. S. & Co., and was a close relative of Schneider, factors tending to show a lack of arm's length bargaining. He held a stock option at the time these agreements were fashioned and throughout the years in question. The ability to exercise this option at anytime would enable Summer to share in the fruits of success of C. S. & Co. as a shareholder at his will, and the agreement in question was similarly not necessary to ensure his continued best efforts. Moreover, it is reasonable to infer that Summer as chief executive officer was awarded generous compensation to make Schneider's compensation appear reasonable. Friedman and Grassman each had the option to purchase 20% of the shares of Future Foam, which options they exercised in 1965. Thus, they too knew they could share in any profits as shareholders, and the contingent compensation plans were not necessary to ensure their best efforts on behalf of the corporation. These individuals with Schneider have been members of the board of directors of Future Foam since prior to the date their compensation agreements were effective, which fact would tend to negate an arm's length bargaining situation. In short, even though the compensation paid to each of these insiders was based on the contingency of profits, this fact alone does not necessarily require a finding under § 1.162–7(a) of reasonableness, especially when as here there is evidence of a lack of arm's length bargaining for the agreements.

Other evidence exists which supports the Tax Court's conclusion that these agreements were not the result of arm's length bargaining but were in reality a mechanism for the distribution of profits "apparently without relation to the services performed." Perhaps most important is the fact that no dividends were ever paid by any of these companies during this time, even though they enjoyed consistent profits and immense success in the industry. A substantial return of investment for the shareholders would be expected from such successful operations. *McCandless, supra,* at 1340. An absence of profits paid back to the shareholders as dividends justifies an inference that some of the purported compensation really represents a distribution of profits. *Id.*; Jones Bros. Bakery, Inc. v. United States, 188 Ct.Cl. 226, 411 F.2d 1282, 1293 (1969); *Pacific Grains, supra,* at 606.

The provisions of the agreements themselves tend to support the notion that they provided for a distribution of profits rather than compensation for services rendered. Under the agreements the officers of each of the companies would equally divide the net profits of the companies where they worked after setting aside but 2% of the net sales for retained earnings and necessary amounts for state and federal taxes. These arrangements *necessarily* left little or nothing to be paid as dividends,

even if the companies should become profitable (as they did), and may be seen as vehicles for distributing future profits, even though they were entered into at a time when the companies were not in healthy financial situations. The petitioner Future Foam points to a $45,000 per annum limitation on Schneider's salary to show reasonableness. However, an excess bonus of $24,600 in 1966 was simply paid the following year, negating the effect of the limitation.

Other evidence supporting the Tax Court's determinations and conclusions include the fact that Schneider spent less time after 1963 working for each of these petitioners, although the salary paid him by each increased dramatically. During the tax years here involved, Schneider felt that he had developed competent management teams in C. S. & Co. and Future Foam and was devoting his principal attention to Charles, Inc., in building up a management team. Schneider's total compensation from Charles, Inc., during the years here involved never exceeded $20,000. Summer also spent much time at Central Woodworking, of which he was one-half owner, detracting from the time he devoted to C. S. & Co. The part-time nature of their work are elements which must be considered in determining the reasonableness of their compensation. As pointed out by the Tax Court, other members of the management team at C. S. & Co. and Future Foam did not have similar bonus arrangements to ensure their best efforts.

As pointed out by the Tax Court in its opinion, Schneider had received a total compensation from the four taxpayers aggregating $132,000, $127,000 and $108,000 in the fiscal years ending 1966, 1967 and 1968 respectively. In addition, the factory buildings used by the corporations were leased from Cynthia Realty, of which Schneider was the sole stockholder.

■ A most significant factor to be considered is a comparison of the compensation under consideration and the prevailing rates of compensation paid to those in similar positions in comparable companies within the same industry. *Jones Bros., supra,* at 1291. The Commissioner introduced evidence showing that the compensation paid by the petitioners was grossly disproportionate to the rates of compensation paid to executives in similar sized companies in the furniture industry, and approached the levels of compensation paid by much larger companies. The percentage of net profits paid by the petitioners in executive compensation during these years was two to three times the percentages paid in the rest of the industry. The Tax Court compared the compensation practices and levels of the petitioners to those of Charles, Inc., another company within the same controlled group but in direct competition with at least C. S. & Co. Charles, Inc., did not have a bonus No. 2 plan such as was in effect for C. S. & Co. and Future Foam; contingent compensation agreements at this company provided for executive bonuses of only 3.5 to 6.5% of sales, though it was run by Schneider under a similar management philosophy. The evidence showed much lower salaries paid to the executives at Charles in the absence of agreements like those at C. S. & Co. or Future Foam. The Tax Court in comparing C. S. & Co. with Charles, Inc., states:

[T]he percentages of net income which were paid as compensation for officers of Charles, Inc., were 22.61%, 28.10% and 33.55% for the fiscal years ended June 30, 1966, 1967 and 1968, respectively. By comparison C. S. & Co. paid 89.21%, 77.69% and 67.53% of its net income to officers as compensation for services during those same years. Because the two businesses were quite similar in operation, size, sales and net profits during the years in issue, we can only attribute the wide discrepancy in compensation to a distribution of profits by C. S. & Co. in the guise of salaries

Taxpayers have introduced some evidence to support their contention that

the compensation paid executive officers is reasonable. Such evidence is largely by way of conclusion. It is not disputed that all recipients of compensation here involved were competent and put in long hours of work and that the success of the taxpayer corporations was attributable to their efforts.

Taxpayers contend that the expert evidence they introduced to the effect that the compensation paid executives was reasonable is undisputed. We disagree. Internal Revenue Agent Johnson, who had served as a revenue agent since 1955 and had examined many corporate returns, testified that the compensation paid the executives here involved was excessive and set out in detail his reasons for such conclusion.

In any event, the Tax Court as a fact finder is the exclusive judge of the credibility of witnesses and the weight to be given their testimony. *Riss, supra,* at 166; Investers Diversified Services, Inc. v. Commissioner, 325 F.2d 341, 351 (8th Cir. 1963); Midland Ford Tractor Co. v. Commissioner, 277 F.2d 111, 115 (8th Cir. 1960).

An element reflecting on the intent of the parties as to the potential effect of these agreements is the fact that the by-laws of these corporations were amended shortly after the agreements were adopted to require the employees to repay to the companies amounts which they received under the agreements but which were later declared by a court not to be deductible expenses for tax purposes. See Article VIII, Amendment to Bylaws, Charles Schneider & Co., adopted June 22, 1963. This may reflect a pre-existing knowledge on the part of the taxpayers that the payments would not be reasonable for tax purposes, and could lead to an inference as to their intent.

No purpose will be served in further detailing the extensive evidence. A careful examination of the record satisfies us that the Tax Court's decision is based upon substantial evidence, that it is not induced by any erroneous view of the law, and that it is not clearly erroneous.

The decision of the Tax Court is affirmed.