**JOSEPH P. KROPF, INC., a Michigan corporation, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**Civ. A. No. 81–A–71.**

United States District Court, D. Colorado.

April 20, 1982.

Karl Ranous of Ranous & Stern, P.C., Gunnison, Colo., for plaintiff.

Marshall I. Whitley, Atty., Tax Div., Dept. of Justice, Washington, D.C., for defendant.

FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER

ARRAJ, District Judge.

Plaintiff seeks an income tax refund for an alleged overpayment of its income tax.

Its claim is based upon a previously omitted deduction of $20,000 which was paid in the form of a bonus to its president allegedly as compensation for services rendered. Defendant disputes the validity of the claimed deduction and has denied a refund. Jurisdiction is conferred by 28 U.S.C. § 1346(a)(1). This memorandum will constitute my findings of fact and conclusions of law pursuant to Fed.R.Civ.P. 52(a).

I

The evidence presented to the Court at trial was limited to testimony given and the exhibits submitted by Joseph Kropf, Jr., president and chief executive officer of the plaintiff taxpayer. Plaintiff was incorporated in 1931 and conducted business in the Detroit, Michigan area as a plumbing and mechanical construction contractor. In 1969, plaintiff acquired Warren Valley Homes, Inc., as a wholly-owned subsidiary. Warren Valley Homes was in the business of residential home building and development. After the acquisition, Joseph Kropf remained as president of plaintiff and his brother William Kropf became president and chief executive officer of the subsidiary. Each owned 50 percent of the stock in the plaintiff.

At the beginning of fiscal year 1971,[1] plaintiff was in the process of completing four substantial construction projects. Due to a personal decision by Joseph Kropf to relocate his residence in Colorado, plaintiff did not bid on new projects and began winding up its business during fiscal year 1971. As the four projects were completed, plaintiff sold its operating assets leaving it eventually in June with primarily accounts receivable assets of over $800,000. Both Joseph Kropf and the plaintiff moved to Gunnison, Colorado, in July-August 1971. In Colorado, Kropf continued to wind up the Michigan business connections, mainly by monitoring warranty work, collecting accounts receivable, and paying plaintiff's outstanding debts.

The board of directors of plaintiff consisted of Joseph Kropf, Jr., William Kropf, and Joseph Kropf, Sr. At its annual meeting for fiscal year 1971, the board approved the corporate officer salaries to be paid for the year and also adopted a bonus plan. In this plan, Joseph Kropf, Jr., and William Kropf as officers could each receive, as additional compensation over their salary allowance, 20 percent of plaintiff's net profits for the year, up to a maximum of $20,000.[2] Plaintiff's net profits were computed by consolidating the profits or losses of plaintiff's business enterprises with those of the subsidiary, Warren Valley Homes. For fiscal year 1971, plaintiff's net profit was $100,030.

After plaintiff's move to Colorado in 1971, various business disputes arose between Joseph and William Kropf and as a result Joseph did not receive the 1971 financial information regarding the subsidiary from William until about April 1972. Once Joseph was certain of the year end profits of the subsidiary and that the subsidiary had authorized payment of a $20,000 bonus to William for fiscal year 1971, he had the plaintiff accrue and subsequently pay a $20,000 bonus to himself for fiscal year 1971. Although this bonus was accrued by the plaintiff in 1972, it was inadvertently omitted as a deduction on its fiscal year 1972 tax return. In 1975 plaintiff timely filed an amended tax return claiming that the $20,000 bonus paid to Joseph Kropf was deductible as reasonable compensation for

1. Plaintiff is an accrual basis, fiscal year taxpayer with its 1971 fiscal year running from November 1, 1970 through October 31, 1971.

2. The text of this provision as inserted in the annual meeting minutes is as follows:

In addition to the basic salaries hereinabove set forth [$50,000], each of the above, Joseph P. Kropf, Jr., and William E. Kropf, shall be entitled to receive, in the nature of additional compensation, 20% of the net profits of the Corporation for the current [fiscal] year before Federal Income Taxes and without reference to any contributions made or to be made to any Joseph P. Kropf, Incorporated Profit Sharing Plan, provided, however, that the total amount of additional compensation payable to either Joseph P. Kropf, Jr., or William E. Kropf under the terms of this paragraph shall not exceed $20,000.00 for the [fiscal] year.

services rendered. The IRS denied the claimed deduction on the amended return and plaintiff filed this suit for a tax refund seeking to recover the amount of the alleged overpayment.

## II

### A

Section 162(a) of the Internal Revenue Code of 1954 allows taxpayers to deduct all ordinary and necessary expenses paid or incurred in carrying on a trade or business including "a reasonable allowance for salaries or other compensation for personal services actually rendered." 26 U.S.C. § 162(a). The regulations of the Internal Revenue Service state that "the test of deductibility in the case of compensation payments is whether they are reasonable and are in fact payments purely for services." 26 C.F.R. § 1.162–7(a) (1981).

As designated by the annual meeting minutes, Joseph Kropf's salary for fiscal year 1971 was $50,000. As mentioned above, it was also possible to receive additional monies as a bonus if the consolidated financial statement of plaintiff and its subsidiary showed profit. In fiscal years prior to 1971, plaintiff used its earnings and profits for business operation and expansion and therefore the officers did not take a bonus in those years. In fiscal year 1971, however, plaintiff paid Joseph Kropf a bonus of $20,000.[3] Since the IRS does not dispute the salary deduction, I will confine my analysis to the validity of deducting the bonus payment as compensation for services rendered. Moreover, I need not decide whether the salary and bonus together constitute "reasonable" compensation,[4] for I find and hold that the $20,000 paid by plaintiff to Joseph Kropf, Jr., was not compensa-

tion for services he rendered to the plaintiff for fiscal year 1971.

### B

■ Because Joseph Kropf is both an officer and stockholder of the plaintiff, this case presents the fairly common question of whether a payment received by him is compensation for services rendered or represents a distribution of earnings, profits, or capital of the plaintiff.[5] The question as to what is compensation for services is strictly one of fact to be determined in each case. Once the IRS has disallowed the deduction, the determination is presumed to be correct and the burden is on the taxpayer to prove the deduction is allowable and he is entitled to a refund. *United States v. Janis*, 428 U.S. 433, 440, 96 S.Ct. 3021, 3025, 49 L.Ed.2d 1046 (1976); *Botany Worsted Mills v. United States*, 278 U.S. 282, 49 S.Ct. 129, 73 L.Ed. 379 (1929). Payments made by closely held corporations to officer-stockholders will be given special scrutiny in order to determine whether the payment constitutes compensation for services or a distribution of profits. *Nowland v. Commissioner*, 244 F.2d 450 (4th Cir. 1957); *Golden Construction Co. v. Commissioner*, 228 F.2d 637 (10th Cir. 1955).

■ A number of factors are given consideration in the effort to characterize the bonus payment in this case, with no single factor being decisive of the question. First, the bonus here was an additional amount of money paid to Kropf over and above the $50,000 designated as salary. Second, the bonuses paid to Joseph and William Kropf directly correspond to their stockholdings in the plaintiff. Each owned 50 percent of the stock and each received a $20,000 bonus for fiscal year 1971. See 26 C.F.R. § 1.162–

---

**3.** William Kropf's bonus of $20,000, although figured from the consolidated statement of plaintiff and Warren Valley Homes, was actually paid by the subsidiary and so reflected on its separate income tax return.

**4.** "Even a payment deemed reasonable, however, is not deductible to the extent that it is in reality a distribution of corporate earnings and not compensation for services rendered." *Charles McCandless Tile Service v. United*

*States*, 422 F.2d 1336, 1339 (Ct.Cl.1970); see *Griffin & Co. v. United States*, 389 F.2d 802 (Ct.Cl.1968); *Northlich, Stolley, Inc. v. United States*, 368 F.2d 272 (Ct.Cl.1966).

**5.** Since dividend distributions are not deductible under 26 U.S.C. § 162, it is to the plaintiff's advantage, of course, to claim the payment as compensation for services rendered.

7(b)(1) (1981); *Paul E. Kummer Realty Co. v. Commissioner*, 511 F.2d 313 (8th Cir. 1975). Third, although the plaintiff had realized earnings and profits in most if not every fiscal year prior to 1971, plaintiff had never declared a dividend in those years. See *Charles McCandless Title Service v. United States*, 422 F.2d 1336 (Ct.Cl.1970). Fourth, the bonus was not determined before profits were known and was not fixed "pursuant to free bargain." Instead, the payment was contingent upon the existence of profit after the fiscal year had ended and payment was controlled by the officers to whom the bonus was paid. See 26 C.F.R. § 1.162–7(b)(2) (1981); *Charles Schneider & Co. v. Commissioner*, 500 F.2d 148 (8th Cir. 1974), *cert. denied*, 420 U.S. 908, 95 S.Ct. 826, 42 L.Ed.2d 837 (1975). Fifth and finally, Kropf testified that no bonus was paid in previous years because the earnings for each year were injected back into the business. The reason the bonus was paid in fiscal year 1971 was "at that time, after checking the consolidated statement, I saw that the capital was not necessary for operation as in the previous several years, and the bonus was on the books so I exercised the bonus option." [6]

In essence then, the bonus payment was a distribution of plaintiff's current and accumulated earnings and profits. Without deciding whether the total monies received could be considered reasonable,[7] I do note that during the last four to five months of fiscal year 1971 Joseph Kropf spent substantially less time working on the business affairs of the plaintiff. There is also evidence that Kropf rebated $6,660 of his salary allotment in response to his brother's claim that Joseph was working "part-time" during these last several months.[8] In sum, the circumstances surrounding the work performed in fiscal year 1971, the salary and bonus paid, and the financial situation of the plaintiff clearly point to the conclusion that the bonus was a distribution of

earnings and not compensation for services rendered. The determination of the Internal Revenue Service denying the deduction claimed by the plaintiff is correct. Accordingly, it is

ORDERED that judgment be entered for defendant and against plaintiff and the complaint and claims therein of Joseph P. Kropf, Inc., be dismissed. Each party will bear its own costs.

---

**6.** Plaintiff's fiscal year 1971 income tax return shows accumulated earnings of $317,227.

**7.** See note 4 *supra*, and accompanying text.

**8.** The total compensation paid to Joseph Kropf, Jr., for fiscal year 1971, then, was $63,340 ($50,000 salary plus $20,000 bonus minus $6,660 rebate).