ESTATE OF GRACE SHANTZ, DECEASED, THOMAS A. SHANTZ, EXECUTOR, ET AL. [1], Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent Estate of Shantz v. Commissioner
Docket Nos. 14665-80, 14666-80, 14667-80, 14668-80.
United States Tax Court
T.C. Memo 1983-743; 1983 Tax Ct. Memo LEXIS 53; 47 T.C.M. (CCH) 614; T.C.M. (RIA) 83743; December 12, 1983. John Foster Lesch, for the petitioners. Gregory A. *54 Vega, for the respondent. WILES
MEMORANDUM FINDINGS OF FACT AND OPINION WILES, Judge: In these consolidated cases, respondent determined the following deficiencies in petitioners' Federal income taxes: Petitioner
Period
Deficiency
Refrigerants, Inc.
March 31, 1976 [2]
$1,054.85
March 31, 1977
28,776.67
Estate of Grace Shantz [3]
1976
1,755.00
1977
1,055.00
Marc A. Shantz
1976
1,755.00
1977
1,055.00
Thomas A. and Helen
S. Shantz
1976
633.60
1977
250.00
After concessions by both parties, the issues remaining for decision are: (1) whether amounts paid by petitioner, Refrigerants, Inc., to its two officer-shareholders represent reasonable compensation for services rendered and, therefore, constituted deductible business expenses under section 162(a)(1); [4] (2) whether petitioner, Refrigerants, Inc., is entitled to a business deduction *55 for certain travel and entertainment expenses incurred by corporate officers; and (3) whether petitioner, Refrigerants, Inc., is entitled to a depreciation deduction under section 167 for its automobile used exclusively by petitioner Thomas A. Shantz. FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. Refrigerants, Inc. (hereinafter petitioner), is an Illinois corporation with offices at 7350 North Cicero Avenue, Chicago, Illinois. Petitioner Marc A. Shantz (sometimes referred to as Mr. Shantz) resided in Winnetka, Illinois, at the time of filing his petition herein. Mr. Shantz was married to Grace Shantz, who died in February 1977. During the years in issue, they filed joint Federal income tax returns. Petitioner Thomas A. Shantz (hereinafter Thomas) and Helen S. Shantz, husband and wife, also resided in Winnetka, Illinois, when they filed their petition herein. During the years in issue, each of the petitioners filed their Federal income tax returns with the Midwest Service Center, Internal Revenue Service at Kansas City, Missouri. Petitioner is *56 a closely held corporation, organized by Mr. Shantz about 1957, with 100 percent of the stock held by members of the Shantz family. Marc A. Shantz and Grace C. Shantz are the parents of Thomas and Richard A. Shantz. During the taxable year ending March 31, 1977, the stock of petitioner was held in the following amounts: Shareholder
No. of Shares
Percentage Ownership
Estate of Grace
C. Shantz
2,500
53%
Marc A. Shantz
600
13%
Thomas A. Shantz
1,300
28%
Richard A. Shantz
300
6%
4,700
100%
Petitioner issued dividends in the following amounts for the following years: Taxable
Dividend
Total Dividends
Year(s)
Per Share
Per Year
1971-1975
$12.00
$56,400.00
1976
5.00
23,500.00
1977
Petitioner is a manufacturers' representative firm. In this capacity, petitioner solicits manufacturers to obtain the authorization to market and sell their product lines to various wholesalers and original equipment manufacturers. It does not stock the items it sells, rather it takes orders for the manufacturers and receives a commission on the gross sales. Petitioner specializes in selling components, parts, and pieces for refrigeration, *57 heating, and air conditioning systems to wholesalers within a 500-mile radius of Chicago.Primarily a selling organization with no substantial assets, petitioner relies heavily upon the reputation and integrity of Mr. Shantz and Thomas for its continued success. Thomas graduated from Marquette University in 1954 with a degree in electrical engineering and spent four year in the Marine Corps as a naval aviator. After leaving the Marines in June 1958, Thomas joined his father's business where he has worked throughout the years in issue. Prior to 1976, Mr. Shantz (Thomas's father) was president, treasurer and chairman of the board of petitioner. Thomas was vice president and sales manager. Throughout 1975 and beginning 1976, Thomas was considering going into business for himself. He had a constant dialogue concerning this with his father who induced Thomas to stay with the company by promising him increased participation in management and a higher salary. In the spring of 1976, Thomas was offered a salesman's position with a manufacturer which he represented at a salary of $35,000 a year. In order to prevent Thomas from leaving, he was elected president of petitioner and his salary *58 increased to $40,000 a year on June 15, 1976, at the annual shareholders and directors meeting. Thereafter, Thomas took over as president of petitioner. As president, Thomas's primary responsibility was to initiate and maintain contracts with manufacturers. Additional duties of the president included making sales presentations, conducting correspondence, and supervising sales personnel. During 1976 and 1977, through Thomas's efforts, petitioner acquired the right to merchandise two new product lines. Sales of these two product lines were responsible for the significant increase in petitioner's gross commissions during its 1977 fiscal year. After Thomas was elected president, his father, as treasurer and chairman of the board, maintained an active role in the management of the company. He maintained contacts with old customers and consulted with Thomas concerning business matters. On December 26, 1976, Mr. Shantz suffered from a stroke and was substantially incapacitated. He was, however, mentally competent to give advise and throughout fiscal year 1977 continued to participate in the management of petitioner. Petitioner did not use a set formula for determining the salaries *59 or bonuses paid to its officers or employees, but they were generally dependent upon market conditions and job performance. The following table illustrates the salary and bonus history of Mr. Shantz and Thomas in relation to petitioner's gross and net commissions: Petitioner's
Net
Taxable
Mr. Shantz
Thomas
Gross
Commissions
Year
Salary
Bonus
Salary
Bonus
Commissions
Before Wages
1973
$24,000
$ 8,000
1974
24,000
$5,000
24,000
10,000
1975
24,000
0
24,000
10,000
$302,288
$147,671
1976
24,000
0
24,666
10,000
204,097
60,432
1977
24,000
15,000
[5] 60,000
26,000
306,906
155,020
In the notice of deficiency, respondent allowed petitioner a deduction for the compensation paid to Mr. Shantz and Thomas during fiscal year 1977 in the following amounts: Claimed
Allowed
Disallowed
Mr. Shantz
Salary
$24,000
$9,000
$15,000
Bonus
15,000
5,000
10,000
Thomas
Salary
60,000
36,000
24,000
Bonus
26,000
10,000
16,000
*60 In the notice of deficiency respondent also disallowed numerous travel and entertainment deductions, taken by petitioner during its 1976 and 1977 fiscal years. Respondent disallowed a deduction for the annual dues of $1,500 paid to the Bob O'Link Golf Club which was used primarily by Mr. Shantz to entertain officers of the various manufacturing concerns that petitioner represented. Respondent further disallowed a deduction for club charges incurred in entertaining clients during the 1976 and 1977 taxable years in the amounts of $2,334 and $1,625, respectively. Respondent also disallowed a deduction for the expenses incurred by Thomas's wife, Helen, to attend the annual convention of the American Society of Heating, Refrigerating, and Air Conditioning Engineers, held in Dallas, Texas, in 1976. Thomas felt it was necessary to have Helen present at this convention because several manufacturers that petitioner represented requested she attend and that she assist in staffing the hospitality suite with other manufacturers' wives during the convention. In addition to petitioner's travel and entertainment expenses, respondent, in the notice of deficiency, disallowed a depreciation deduction *61 taken on petitioner's automobile which was used exclusively by Thomas during the years in issue. Except for commuting, Thomas used the automobile for business purposes. It was driven about 18,000 to 20,000 miles annually; this includes mileage for Thomas's commuting to and from work, about 6 to 8 miles each way. Petitioner claimed depreciation deductions for the automobile in its 1976 and 1977 fiscal years in the amounts of $1,700 and $500, respectively. Respondent has allowed the depreciation deductions in the amounts of $1,020 and zero, respectively. OPINION Issue 1. Reasonable Compensation
Section 162(a)(1) provides that a corporation is entitled to a deduction for all ordinary and necessary expenses paid or incurred in carrying on its trade or business including "a reasonable allowance for salaries or other compensation for personal services actually rendered." We must determine whether the compensation paid to Mr. Shantz and Thomas in petitioner's fiscal year ending March 31, 1977, was reasonable compensation under section 162(a)(1). This is a question of fact and petitioners bear the burden of proof. See e.g., Botany Worsted Mills v. United States,278 U.S. 282 (1929); *62 Home Interiors & Gifts, Inc. v. Commissioner,73 T.C. 1142, 1155 (1980); Dielectric Materials Co. v. Commissioner,57 T.C. 587, 591 (1972). In determining the reasonableness of the compensation, several factors should be considered including the employee's qualifications; the nature, extent, and scope of the employee's work; the size and complexity of the business; a comparison of salaries paid with the gross income and the net income; the prevailing economic conditions; comparison of salaries with distributions to shareholders; the prevailing rates of compensation for comparable positions in comparable concerns; the salary policy of the taxpayer as to all employees; and in the case of small corporations with a limited number of officers, the amount of compensation paid to the particular employee in previous years. All facts must be considered and no single factor is determinative. Home Interiors & Gifts, Inc.,supra at 1155-1156, citing and quoting from Mayson Mfg. Co. v. Commissioner,178 F. 2d 115, 119 (6th Cir. 1949), revg. a Memorandum Opinion of this Court. In addition, where officer-shareholders, in *63 control of a corporation, set their own compensation, careful scrutiny is required to determine if the compensation is in fact a distribution of earnings and profits. Charles Schneider & Co. v. Commissioner,500 F. 2d 148, 152 (8th Cir. 1974), affg. a Memorandum Opinion of this Court, cert. denied 420 U.S. 908 (1975). The following chart shows the salaries and bonuses paid by petitioner, and the amount that respondent, in the notice of deficiency, determined to be reasonable compensation for the officers of petitioner during the fiscal year 1977: Mr. Shantz
Paid
Allowed
Salary
$24,000
$9,000
Bonus
15,000
5,000
Thomas
Salary
60,000
36,000
Bonus
26,000
10,000
Respondent introduced no witnesses to testify that the compensation he allowed was in fact reasonable for the services rendered, and we do not know exactly how these figures were derived. On the other hand, Thomas testified for petitioner that the compensation paid was reasonable.Indeed, Thomas was the only witness who testified at trial. After reviewing the record herein, we do not accept either respondent's or petitioner's figures. Upon consideration *64 of all the relevant factors, we find that petitioner has satisfied his burden of proof that the following amounts paid during the fiscal year 1977 constituted reasonable compensation: Salary
Bonus
Mr. Shantz
$24,000
$5,000
Thomas
40,000
26,000
The findings of fact set out fully the various services which Mr. Shantz and Thomas performed to justify their compensation. We need not review all those services here. Instead, we will only discuss those factors upon which we placed our greatest reliance in determining Mr. Shantz's and Thomas's reasonable compensation for petitioner's 1977 fiscal year. We note at the outset that petitioner paid dividends six years prior to the year in issue. From 1971 through 1975, petitioner paid an annual dividend of $12 per share, for a total dividend distribution of $56,400 per year. While there is no evidence as to the amount of gross commissions received during the years 1971 through 1974, petitioner received $302,288 in gross commissions in 1975, a year in which it paid a $12 per share dividend. During 1976 when petitioner's gross commissions dropped to $204,097, it nonetheless paid a $5 per share dividend, for *65 a total dividend distribution of $23,500. During 1977, petitioner's gross commissions increased to the amount of $306,906; yet petitioner paid no dividends that year. Testifying on petitioner's behalf, Thomas explained that the dividends prior to 1977 were unusually high because his father "took great personal pleasure in paying [Grace Shantz] dividends * * *," and since Grace died in February 1977, it was no longer necessary to pay artificially high dividends. [6] While this explanation is plausible, it does not explain why petitioner paid no dividends in its 1977 fiscal year. Accordingly, we conclude that some of the compensation paid to Mr. Shantz and Thomas during petitioner's fiscal year ending March 31, 1977, was in fact a distribution of earnings and profits. We will first consider Mr. Shantz's salary and bonus received during petitioner's 1977 fiscal year. In support of his position that the compensation was unreasonable, respondent relies heavily on the fact that *66 in December 1976, Mr. Shantz suffered a stroke and was partially incapacitated. Thomas, however, testified that after the stroke his father was mentally capable of rendering business advice, and that he in fact continued to consult regularly with his father concerning corporate affairs and management decisions. We found Thomas to be a credible witness and, because respondent introduced no evidence to refute this testimony, we accept Thomas's statement as fact. The evidence supports our findings that Mr. Shantz's salary, set at $24,000 since 1974, constituted reasonable compensation for services rendered during the fiscal year 1977. With respect to Mr. Shantz's bonus, however, we are not convinced that a $15,000 bonus was reasonable under the circumstances. In the four preceding years, when Mr. Shantz was president, treasurer and chairman of the board, the maximum bonus he received was $5,000. Respondent has allowed a $5,000 bonus for fiscal year 1977, and given Mr. Shantz's physical condition, we find this to be a reasonable bonus. We now turn to consideration of Thomas's salary and bonus received during petitioner's 1977 fiscal year. In support of his position that Thomas's *67 compensation was unreasonable, respondent points to the annual meeting of shareholders and directors held on June 15, 1976, which set Thomas's salary at $40,000. [7] We agree with respondent that action by the board of directors fixing the salary is some indication of reasonable compensation, but it alone is not determinative. During 1975 and 1976 Thomas was considering leaving his father's company. In fact, he received an offer of $35,000 a year from a manufacturer he represented. In order to induce Thomas to remain with petitioner, his father promised him greater participation in management and a higher salary, and on June 15, 1976, at the annual meeting, Thomas was elected president and his salary set at $40,000. In addition to his salary, Thomas expected his compensation to include a bonus. Petitioner had no formula for determining bonuses, but it was generally dependent upon profits and *68 performance. In the preceding three years, Thomas had received an annual bonus of $10,000. In 1977, petitioner increased Thomas's bonus to $26,000, which in view of his job performance that year, does not seem unreasonable.Thomas, as president of petitioner, solicited new manufacturers whom it could represent. During 1977, he was primarily responsible for bringing in two new product lines, the sales of which in large part increased petitioner's gross commissions from $204,097 in 1976 to $306,906 in 1977. In addition to acquiring new product lines, Thomas maintained good relationships with existing manufacturers. Upon consideration of the record herein, we are convinced that the $40,000 salary fixed by the board of directors and a $26,000 bonus were reasonable compensation for services performed during petitioner's fiscal year ending March 31, 1977. Issue 2. Travel and Entertainment Expenses
Respondent disallowed petitioner's claimed deductions for the annual dues and expenses incurred by Mr. Shantz in entertaining business clients at the Bob O'Link Golf Club during petitioner's 1976 and 1977 fiscal years in the amounts of $3,834 and $3,125, respectively.
Since the *69 club was used primarily for the purpose of entertaining present and prospective manufacturers that petitioner represented, we are confident that these were ordinary and necessary business expenses that would be deductible for Federal income tax purposes if properly substantiated.However, to be deductible, entertainment expenses must meet the strict substantiation requirements of section 274. Generally, section 274 provides that in order to deduct expenses associated with an entertainment facility, the taxpayer must establish that the facility is primarily used for the furtherance of his trade or business and the taxpayer must maintain records of such use. Sec. 1.274-5(c)(6)(b)(iii), Income Tax Regs. The taxpayer's records must show the amount, the time and place, the business purpose, and the business relation to the taxpayer of each person using the facility for each expenditure. Sec. 1.274-5(b)(1), Income Tax Regs.
Petitioner has, at best, substantiated the time, place and the amount of each expenditure by receipts and monthly statements from the club. However, petitioner did not provide any evidence, other than Thomas's testimony, as to the business purpose or the business *70 relationship of each person using the facility. Since Thomas by his own admission was not present at these events, his conjecture as to the purpose and the relationship is insufficient to meet the substantiation requirements of section 274. [8]Section 1.274-5(c)(2), (3), Income Tax Regs. Accordingly, we hold that petitioner is not entitled to a business deduction for the club dues and charges incurred during the years in issue. We now turn to consideration of whether petitioner can deduct the convention expenses attributable to Thomas's wife (Helen). To deduct these expenses, petitioner must establish that Helen's presence at the convention had a bona fide business purpose. Sec. 1.162-2(c), Income Tax Regs. Moreover, performance of incidental services or attendance at social functions will not cause *71 her expenses to qualify as deductible business expenses. See sec. 1.162-2(c), (d), Income Tax Regs.
Petitioner has failed to convince us that at the convention Thomas's wife did more than perform incidental services and attend social functions. Accordingly, we must find for respondent on this issue. [9]Rule 142, Tax Court Rules of Practice and Procedure; Welch v. Helvering,290 U.S. 111 (1933). Issue 3. Depreciation Deduction
Section 167(a) permits a deduction for the depreciation of property used in a trade or business. When, as in this case, *72 corporate property is used for both business and personal use, an allocation between uses is appropriate. Henry Schwartz Corp. v. Commissioner,60 T.C. 728, 744 (1973). Respondent has disallowed part of petitioner's depreciation deduction for petitioner's automobile which was used exclusively by Thomas in fiscal year 1976, and disallowed all of the depreciation deduction in fiscal year 1977. With the exception of his daily commute to and from work, Thomas used the automobile exclusively for business purposes. The automobile was driven a total 18,000 to 20,000 miles per year, of which 3,000 to 4,000 miles were due to Thomas's commute to and from work. It is well settled law that commuting between ones home and place of employment is a nondeductible personal expense. Sec. 1.262-1(b)(5), Income Tax Regs. However, petitioner is entitled to depreciation deduction for the percentage of business use of the automobile. Henry Schwartz Corp.,supra at 744. Based upon the record, and bearing heavily against the petitioner whose inexactitude is of his own making, we conclude that a proper allocation for business use is 70 percent. Cohan v. Commissioner,39 F. 2d 540 (2d Cir. 1930). *73 Therefore, petitioner is entitled to deduct 70 percent of the automobile's depreciation. To reflect the foregoing, Decisions will be entered under Rule 155.
Footnotes
1. Cases of the following petitioners are consolidated herewith: Refrigerants, Inc., an Illinois Corporation, docket No. 14666-80; Marc A. Shantz, docket No. 14667-80; and Thomas A. Shantz and Helen S. Shantz, docket No. 14668-80.↩
2. Petitioner, Refrigerants, Inc., is on a fiscal year ending March 31. ↩
3. Thomas A. Shantz is the executor of the Estate of Grace Shantz, which was made a petitioner herein solely because Grace was married to Marc A. Shantz and joint tax returns were filed in 1976 and 1977.↩
4. All statutory references are to the Internal Revenue Code of 1954, as amended.↩
5. At the annual meeting of shareholders and directors, held June 15, 1976, it was resolved that Thomas's salary would continue at $40,000, and no explanation was offered as to why he received $60,000.↩
6. We are convinced that dividends of $56,400 in 1975 and $23,500 in 1976, when petitioner has no substantial assets and netted before wages $147,671 and $60,000, respectively, are artifically high.↩
7. While respondent maintains that the board of directors' resolution fixing Thomas's salary at $40,000 is evidence that $60,000 is unreasonable compensation, he does not explain why $40,000 is not reasonable compensation or how he determined that $36,000 was reasonable compensation.↩
8. We do not imply that even if Thomas had been present at these events, his testimony would have been sufficient to meet the strict requirements of section 274, since he failed to provide any corroborating evidence concerning either the business relationship of the person using the facility or the business purpose of each event. Section 1.274-5(c)(2), (3), Income Tax Regs.↩
9. While we did find as a fact that several manufacturers which petitioner represented requested that Thomas's wife (Helen) attend the convention and help staff the hospitality suite, this evidence alone is insufficient to establish a bona fide business purpose. Petitioner offered no evidence that Helen performed specific duties at the convention, or that her attendance was necessary to the business conducted at the convention. Moreover, there is no evidence that Thomas would have been less effective without his wife at the convention. See Fenstermaker v. Commissioner,T.C. Memo. 1978-210↩.