T.C. Memo. 2017-51

UNITED STATES TAX COURT

HOME TEAM TRANSITION MANAGEMENT, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 26590-15.                    Filed March 28, 2017.

<u>Richard S. Avellone</u>, for petitioner.

<u>Karen O. Myrick</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

GERBER, <u>Judge</u>:  Respondent determined income tax deficiencies of
$50,282, $9,951, and $12,310 for petitioner's 2011, 2012, and 2013 taxable years,
respectively.  Respondent also determined accuracy-related penalties of

[*2] $10,056.40, $1,990.20, and $2,462 under section 6662(a)[1] for petitioner's

2011, 2012, and 2013 taxable years, respectively. Finally, respondent determined

late filing additions to tax of $12,664.83 and $3,284.43 under section 6651(a)(1)

for petitioner's 2011 and 2013 taxable years, respectively. After concessions by

the parties,[2] the issues remaining for our consideration are: (1) whether petitioner

is entitled to deduct management fees for 2011, 2012, and 2013; (2) whether

petitioner is liable for accuracy-related penalties under section 6662(a) for each

taxable year; and (3) whether petitioner is liable for the late filing addition to tax

for the 2011 taxable year.

## FINDINGS OF FACT[3]

Petitioner, a corporate home healthcare service provider, had its principal

place of business at St. Louis, Missouri, at the time the petition was filed.

---

[1]Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the years at issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

[2]Respondent conceded that petitioner did not fail to report $8,843 of gross income for 2011 and that it is not liable for the late filing addition to tax for 2013. Petitioner on brief presented no argument as to the remaining sec. 6662 penalties and sec. 6651 addition to tax and conceded that its liability for the penalties and addition to tax depends upon the Court's holding with respect to the deductibility of the management fees.

[3]The parties' stipulation of facts and the attached exhibits are incorporated by this reference.

[*3] Petitioner provides at-home aid services to assist clients in their daily living tasks such as bathing, eating, cooking, and grocery shopping. Petitioner also offers brief visits from a nurse to set out regular medications, monitor vital statistics, and conduct a range of body exercises with a client.

Petitioner reports its income and expenses on the cash method of accounting and filed its 2011 Form 1120, U.S. Corporation Income Tax Return, on March 11, 2013. During the years at issue petitioner's clientele was 65%-70% Medicaid funded, 10% Veterans Affairs funded, and 20%-25% privately funded. During the years at issue petitioner was wholly owned by Sacer Cor Enterprises, Inc. (Sacer Cor). Sacer Cor purchased petitioner through a combination of owner contributions, interest-bearing loans funded by the owners, and a corporate loan from Union Bank.

Sacer Cor is a Missouri for-profit corporation that was incorporated by Charles N. Honigfort. Sacer Cor's shares were held in equal percentages by Charles and Mary Honigfort and Sean and Ruth Ann Noonan. When Sacer Cor was incorporated, it was the intention of the four shareholders to acquire in-home healthcare companies. On October 1, 2010, Sacer Cor acquired petitioner, which had been an ongoing business since 1994 and had the same four shareholders (owners) as Sacer Cor. When the owners acquired petitioner, it was owned and

[*4] operated by an individual who lived in New York State and had an existing contract with Medicaid. During 2011 through 2013 petitioner was Sacer Cor's only holding and no other healthcare companies were acquired.

After Sacer Cor's acquisition of petitioner, Mr. Honigfort performed its daily administrative duties, including operations, payroll, bill payment, monitoring cash flow, and bookkeeping. Ms. Noonan handled petitioner's healthcare management responsibilities. For the three years at issue Mr. Honigfort and Ms. Noonan received wages from petitioner for the work performed. Mr. Honigfort and Ms. Noonan provided marketing services to petitioner, for which neither received additional compensation. Likewise, neither Mr. Honigfort nor Ms. Noonan received additional compensation from Sacer Cor. During the three years at issue Sacer Cor did not pay wages or compensate any of the four shareholder/directors for work performed. Sacer Cor's four owners (including Mr. Honigfort and Ms. Noonan) periodically received director's fees, each receiving an equal amount. After 2013 Mr. Honigfort and Ms. Noonan received compensation from petitioner when there was sufficient cashflow to enable payment.

Petitioner deducted $120,000, $36,000, and $42,000, claiming that it had paid those deductions to Sacer Cor for management services for the 2011, 2012,

[*5] and 2013 taxable years, respectively.  Respondent disallowed these deductions in full.  On its corporate returns Sacer Cor reported the management fees from petitioner as income.

The $120,000 petitioner deducted as management fees for 2011 had initially been classified on its books as loans and was reclassified at the end of the year during the preparation of its return.  Likewise, during the year 2011 petitioner made transfers to Sacer Cor totaling $76,000 that initially were classified on petitioner's books as intercompany loans; later, a portion was reclassified as management fees.  At the end of the 2011 year journal entries were made on petitioner's books to reduce the balance of the intercompany loans account to $63,149.

During 2012 petitioner made transfers of $69,500 to Sacer Cor, which initially were classified on petitioner's books as intercompany loans and some of which were claimed as a management fee deduction on petitioner's return.  The management fee deduction for funds transferred to Sacer Cor was primarily determined according to the amount of cash Sacer Cor needed to make outside loan repayments and also to the amount of fiscal year operating profits of petitioner and Sacer Cor.

[*6]    Sacer Cor's board meeting minutes dated July 26, 2010, state that its directors will periodically review and direct the operations of entities it controls. The minutes also state that the board will "assess appropriate fees against its entities for management services performed for them or on their behalf".  The January 13, 2011, board meeting minutes state:  "[D]ue to restricted cash flow from operations [of petitioner], no member compensation or management fees would at this point in time be approved or assessed."  Sacer Cor's June 9, 2011, board meeting minutes state that for day-to-day management services to petitioner "it was determined that the amount of twenty-seven thousand dollars ($27,000) was appropriate for its management services through June 11, 2011."  Likewise, the December 15, 2011, board meeting minutes state that management fees of $93,000 were approved for the period June through December 31, 2011.  Board meeting minutes for December 13, 2012, and December 12, 2013, state that the board approved management fees of $36,000 and $42,000 for those respective years.  Other than those references to management fees in the board minutes there were no written materials or agreements concerning management fees or management duties performed.

The amounts of the management fees deducted were not based upon the number of hours worked or the particular services performed.  Essentially, they

[*7] were based on the amounts of cash required by Sacer Cor to make its loan payments and the amounts of cash available from petitioner's operating profits.

Respondent examined Sacer Cor's and petitioner's returns and determined that the management fees that had been deducted in reality were dividends to Sacer Cor. On the basis of that determination respondent disallowed petitioner's management fee deductions, and Sacer Cor was entitled to and received refunds of tax because of a reduction in the income it had reported as management fee income. Sacer Cor did not protest or contest respondent's determination that it was entitled to refunds for the same years that deficiencies were determined for petitioner.

## OPINION

The seminal issue remaining for our consideration is whether petitioner is entitled to its claimed deductions for management fees for 2011, 2012, and 2013. Respondent determined that the management fees were disguised dividends and not deductible. In support of that determination, respondent argues that no management services were performed by Sacer Cor or its officers, there was no written agreement between petitioner and Sacer Cor providing for management services, and that, in effect, the payments from petitioner to Sacer Cor were repayments of intercompany loans. Respondent also notes that petitioner remitted

[*8] funds to Sacer Cor only as long as the intercompany loan was outstanding. Petitioner disagrees, arguing that Sacer Cor's board meeting minutes reflect that management fees were intended and voted by the board for each of the years at issue. Petitioner also argues that the amount of management fees varied each year because there was no way of knowing, in advance, the amount of time needed to manage petitioner.

Management fees are deductible under section 162 if they are ordinary, necessary and reasonable payments made for services rendered. See RTS Inv. Corp. v. Commissioner (RTS), T.C. Memo. 1987-98, aff'd, 877 F.2d 647 (8th Cir. 1989) (RTS); sec. 1.162-7(a), Income Tax Regs. That case involved whether amounts paid as salaries and management fees in closely held corporations were reasonable compensation. The Court held that the salaries and management fees that were paid by a subsidiary were not reasonable where, among other things, the amount paid was equally distributed to shareholders according to ownership percentages and was paid in direct relation to the subsidiary's profitability.

The Court noted in RTS that where a corporation is controlled by officer/employees who set their own compensation, special scrutiny must be given to such salaries, citing Charles Schneider & Co. v. Commissioner, 500 F.2d 148, 152 (8th Cir. 1974), aff'g T.C. Memo. 1973-130. The Commissioner's

**[\*9]** determination is presumptively correct, and the taxpayer has the burden of proving otherwise. Rule 142(a); Botany Worsted Mills v. United States, 278 U.S. 282 (1929).

Section 1.162-7(b), Income Tax Regs., provides in pertinent part:

(1) Any amount paid in the form of compensation, but not in fact as the purchase price of services, is not deductible. An ostensible salary paid by a corporation may be a distribution of a dividend on stock. This is likely to occur in the case of a corporation having few shareholders, practically all of whom draw salaries. * * *

(2) The form or method of fixing compensation is not decisive as to deductibility. * * *

(3) In any event the allowance for the compensation paid may not exceed what is reasonable under all the circumstances. It is, in general, just to assume that reasonable and true compensation is only such amount as would ordinarily be paid for like services by like enterprises under like circumstances. The circumstances to be taken into consideration are those existing at the date when the contract for services was made, not those existing at the date when the contract is questioned.

In Friendly Fin., Inc. v. Commissioner, T.C. Memo. 1991-551, 1991 Tax Ct. Memo LEXIS 599, this Court held that similar payments were distributions of corporate earnings and profits and not compensation as the payments made were not in relation to services provided. That case also involved the treatment of payments made to shareholders of closely held entities. In reaching its conclusion, the Court provided the following guidance:

[*10] Thus, a taxpayer must show that the amount paid as compensation (1) is "reasonable" and (2) is for services actually rendered. Close scrutiny is given to deductions claimed for payments made by a corporation controlled by those to whom the payments are made. If the payments are distributions of earnings, rather than compensation for services rendered, they are not deductible. Charles Schneider & Co. v. Commissioner, 500 F.2d 148, 151-152 (8th Cir. 1974), aff'g T.C. Memo. 1973-130; Home Interiors & Gifts, Inc. v. Commissioner, 73 T.C. 1142, 1156 (1980). [Id., 1991 Tax Ct. Memo LEXIS 599, at *35.]

In this case, we have four individuals who were equal corporate shareholders in a home care business, petitioner, that they had acquired in 1994. During 2010 the same four shareholders incorporated another corporation, Sacer Cor, in which they were equal shareholders, and Sacer Cor acquired ownership of petitioner, the existing home healthcare business. Two of the shareholders were employees of petitioner, and they were paid for their services, which included day-to-day operation of petitioner. The other two shareholders were not employees of petitioner. None of the four shareholders were employees of Sacer Cor, and no one, including the four shareholders, was paid a salary for any services rendered to or on behalf of Sacer Cor. Periodically, the four shareholders of Sacer Cor were paid equal amounts as director's fees. There is no credible evidence showing that any management services were performed by the shareholders or other employees of Sacer Cor for petitioner.

[*11]  Given those facts, petitioner has failed to meet its burden of showing that the deducted management fees it paid to Sacer Cor were for services rendered and/or "reasonable" within the meaning of section 162.  Exacerbating those circumstances are the facts that the alleged management fees were originally booked as loan payments and that the amounts corresponded to petitioner's ability to pay; i.e., they varied depending on petitioner's revenues.  We accordingly hold that respondent's disallowance of the management fee deductions that petitioner claimed for 2011, 2012, and 2013 is not in error and is sustained.

Petitioner has conceded on brief that its liability for the section 6662 penalties and the section 6651 addition to tax depends on this Court's holding regarding the deductibility of the management fees.  Because petitioner presented no evidence showing that its actions were reasonable and not negligent or in disregard of the rules or that its return was timely, the penalty issues are, to the extent not conceded, decided for respondent.

To reflect the foregoing,

Decision will be entered

under Rule 155.