T.C. Summary Opinion 2006-25

UNITED STATES TAX COURT

PETER F. & MAUREEN L. SPELTZ, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 5851-04S.            Filed February 14, 2006.

<u>Thomas B. Copeland</u>, for petitioners.

<u>Melissa J. Hedtke</u>, for respondent.

KROUPA, <u>Judge</u>:  This case was heard pursuant to the provisions of section 7463[1] of the Internal Revenue Code in effect at the time the petition was filed.  The decision to be

---

[1]All section references are to the Internal Revenue Code in effect for the years at issue, unless otherwise indicated, and Rule references are to the Tax Court Rules of Practice and Procedure.

entered is not reviewable by any other court, and this opinion should not be cited as authority.

Respondent determined deficiencies in petitioners' Federal income taxes of $921[2] for 2000 and $1,082 for 2001. The issues for decision are:

1. Whether petitioners, husband and wife, had an employer-employee relationship. We find that they did.

2. Whether petitioners may exclude from gross income medical benefits of $3,279 in 2000 and $4,539 in 2001 paid by an employer-spouse to an employee-spouse. We find that they may.

3. Whether petitioners may deduct from gross income medical benefits of $3,279 in 2000 and $4,539 in 2001 paid by an employer-spouse to an employee-spouse. We find that they may.

## Background

Some of the facts have been stipulated and are so found. The stipulation of facts and the accompanying exhibits are incorporated by this reference. Petitioners resided in Rollingstone, Minnesota, at the time they filed the petition.

Maureen Speltz

Petitioner Maureen Speltz (Mrs. Speltz) has operated a sole proprietorship daycare business in petitioners' home since 1982. Mrs. Speltz has an elementary education degree, and she has been

---

[2]All monetary amounts have been rounded to the nearest dollar.

licensed by the State of Minnesota to run the daycare business since 1987. Mrs. Speltz cared for up to 16 children daily during the years at issue.

Mrs. Speltz has managed the daycare since 1987 through the years at issue. Mrs. Speltz established the daycare's rules, policies, and hours of operation. She established a daycare business checking account and credit card account in her name and purchased a professional pre-school curriculum that she has used to instruct the children.[3] In addition, Mrs. Speltz drafted all parental contracts, addressed parental complaints, negotiated daycare rates, collected payment, administered bookkeeping, handled State of Minnesota regulatory personnel, utilized the services of Mr. Speltz, and taught the curriculum.

In comparison, Mr. Speltz, while integral to the daycare, had a limited and narrowly defined role during 2000 and 2001. Mr. Speltz assisted Mrs. Speltz by monitoring the children from approximately 2:30 p.m. until 6:00 p.m. and by performing other maintenance-type tasks. Mr. Speltz's part-time role was designed specifically to fit a medical reimbursement plan that Mrs. Speltz established with the help of a tax adviser.

Medical Reimbursement Insurance Plan

Mrs. Speltz established an employer-provided accident and health plan for employees with the help of a tax adviser in 2000.

---

[3]The curriculum was a pre-kindergarten program designed to teach children colors, letters, and numbers.

Mrs. Speltz executed three documents in 2000, an employment contract, a salary redirection document, and a client data sheet.

The employment contract described Mr. Speltz's job duties. Mrs. Speltz and Mr. Speltz signed the contract. Mr. Speltz's duties were described as childcare, lawn care, chopping firewood, and repairing toys and sundry items. Mr. Speltz was also required to work an "average" of 12.5 hours weekly in return for a medical reimbursement benefit limited to $6,500 per year. Medical benefits, according to the contract, included deductibles, insurance premiums, and medical costs not covered by insurance.

The Employee Salary Redirection document provided that $542 per month would be directed to a flexible spending account on Mr. Speltz's behalf to pay for Mr. Speltz's insured and uninsured healthcare costs. Mr. Speltz signed the employee salary redirection document as an "employee" and Mrs. Speltz as his "employer."

In addition, Mrs. Speltz signed a client data sheet requiring Mr. Speltz to work a "minimum" of 12.5 hours a week and a "minimum" of 7 months a year. The client data sheet also stated that Mr. Speltz's medical reimbursement was limited to $6,500 per year.

Mrs. Speltz relied upon an Internal Revenue Service Coordinated Issue Paper, entitled "Health Insurance Deductibility

for Self-Employed Individuals," dated March 29, 1999, and Rev. Rul. 71-588, 1971-2 C.B. 91, in setting up the plan.[4] Each document permits, under certain circumstances, a sole-proprietor employer-spouse to deduct medical benefits provided to an employee-spouse, and the employee-spouse to exclude those same benefits from his or her gross income.

Mr. Speltz

Mr. Speltz has provided childcare services (and other general services) for the daycare since 2000 and has been reimbursed under the daycare's accident and health plan for a limited amount of medical care expenses and insurance premiums as compensation for his services.

Mr. Speltz also worked full time during the years at issue as a machinist for Fastenal Company, Inc. (Fastenal). Mr. Speltz's hours at Fastenal were from approximately 6 a.m. until approximately 2:15 p.m. Mr. Speltz had medical and dental insurance through Fastenal. Mr. Speltz's spouse and dependents were eligible to receive benefits. Mr. Speltz also had a snow removal and lawncare service during 2000 and 2001.

Mr. Speltz began working for the daycare when he returned home from his full-time job on weekdays, around 2:30 p.m., and he

[4]Internal Revenue Service Coordinated Issue Papers and Revenue Rulings are generally not entitled to deference in this Court. See Lunsford v. Commissioner, 117 T.C. 159, 182 (2001); see also N. Ind. Pub. Serv. Co. v. Commissioner, 105 T.C. 341, 350 (1995), affd. 115 F.3d 506 (7th Cir. 1997).

worked until at least 6 p.m., when the daycare closed. Mr. Speltz cared for all the children if Mrs. Speltz was absent, usually when Mrs. Speltz had doctor or dentist appointments. For a short period of time, Mr. Speltz cared for a small boy whose mother had to work very early from 5 a.m. until 6 a.m. Generally, however, Mrs. Speltz directed Mr. Speltz to monitor and care for about five or six older children when he arrived home.[5] Mr. Speltz monitored the children indoors and whenever possible outdoors, where the children could be active playing kickball, soccer, and basketball, and sledding on the vast stretch of property that petitioners maintained according to State of Minnesota daycare standards. Sometimes Mr. Speltz took the children on nature walks along the creek running through petitioners' property. Mr. Speltz also took the children for rides in a trailer connected to his tractor, and he often took them across the many acres of petitioners' farm to collect firewood that Mr. Speltz chopped to heat petitioners' home.[6] In addition, Mr. Speltz spent time repairing the children's toys, cleaning, and organizing the daycare areas.

Mr. Speltz also performed tasks benefiting petitioners personally, including picking up mail, groceries, chopping

---

[5]When the children were split into two groups, Mrs. Speltz watched the younger children, whose care involved diapering, toilet training, and playing with toys.

[6]Firewood was the only source of heat in their home.

firewood, and transporting the wood by tractor from their distant farmhouse to their home. If Mr. Speltz took the older children in the trailer when he picked up the firewood, he might spend up to 2 hours returning because he drove the children around the property.

During the snowy Minnesotan winter months, Mr. Speltz plowed petitioners' driveway and shoveled snow from the walkway to petitioners' house. Mr. Speltz did this several times daily on blustery days as Mrs. Speltz's clients were usually mothers carrying small children who dropped them off and picked them up at several times during the day (Mr. Speltz sometimes left his full-time job to do this).

Mrs. Speltz directed that Mr. Speltz perform only childcare and maintenance tasks, and she made contemporaneous notes detailing his activities. Mr. Speltz's assistance was integral to Mrs. Speltz's daycare business. Moreover, as the nature of Mr. Speltz's daycare-related work varied little, he required minimal instruction. Though petitioners derived a personal benefit from some of Mr. Speltz's activities, Mr. Speltz would not have spent the amount of time or devoted the degree of care to those activities were there no daycare business.

Training

Mrs. Speltz directed Mr. Speltz to take classes in nutrition and general childcare because the State of Minnesota and County in which petitioners resided required daycare personnel to have this training. Mr. Speltz's training consisted of about 2 hours of child-nutrition training and about 4 hours of child-behavioral guidance.

Mrs. Speltz substantiated that Mr. Speltz worked 525.25 hours in 2000 and 735 hours in 2001, an average of 12.84 hours a week in 2000 and 14.13 hours a week in 2001.

License

Mrs. Speltz had a State of Minnesota issued daycare license. From 1987 through February 1999, Mrs. Speltz's license listed her name only. In February 1999, the State issued the license in Mrs. Speltz's and Mr. Speltz's names. Mr. Speltz did not apply for the license and took no part in interviews or inspections required to obtain the license. The State of Minnesota listed Mrs. Speltz's and Mr. Speltz's names most likely because they were listed as co-owners of the home where Mrs. Speltz maintained the daycare. The license issued in August 2001 omitted Mr. Speltz's name and listed only Mrs. Speltz's name.

Tax Returns

Petitioners reported daycare income and expenses on Schedules C, Profit or Loss From Business, of their joint Federal

income tax returns for 2000 and 2001, listing their principal business as "child care." Petitioners deducted $3,279 as an employee benefit program expense in 2000, including $705.82 for health insurance premiums. Petitioners deducted $4,539 as an employee benefit program expense in 2001, including $968.06 for health insurance premiums.

Respondent disallowed petitioners' claimed employee benefit program expense deductions because respondent found petitioners failed to establish that the amounts were ordinary and necessary business expenses or that Mr. Speltz was a bona fide employee of the daycare. Respondent mailed petitioners a deficiency notice on February 23, 2004, and petitioners timely filed a petition.

<u>Discussion</u>

We are presented with two issues, the excludability of medical premiums and reimbursements from petitioners' gross income and the deductibility of those same amounts from the daycare business income. Regarding the excludability issue, we must determine whether petitioners entered into a valid arrangement for the payment of health benefits under section 105(b) and whether Mr. Speltz was a bona fide employee of the daycare. Regarding the deductibility issue, we must determine whether the deduction amount was an ordinary and necessary business expense of the daycare.

Respondent makes a number of alternative arguments to disallow the deductions and exclusions.  Respondent argues that petitioners' section 105(b) plan was improper and/or failed on its own terms, that Mr. Speltz was not a bona fide employee of the daycare, and that the expenses were not ordinary and necessary business expenses.  Petitioners counter that the medical premiums and reimbursements should be excluded from Mr. Speltz's gross income because petitioners set up a proper section 105(b) plan for daycare employees and that Mr. Speltz was a bona fide employee.  Petitioners also contend that the medical premiums and reimbursements are deductible from the daycare business income because they were ordinary and necessary business expenses of the daycare.  We first address the burden of proof.

I.   Burden of Proof

The Commissioner's determinations are presumptively correct, and the taxpayers bear the burden of proving that the Commissioner's determinations are erroneous.  Rule 142(a); see Welch v. Helvering, 290 U.S. 111, 115 (1933).  Taxpayers also bear the burden of proving that they are entitled to the claimed deductions.  INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992); New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934).

A taxpayer's burden, however, may shift to the Commissioner if the taxpayer introduces "credible evidence" complete with the

necessary substantiation and documentation.  See sec. 7491(a);

Higbee v. Commissioner, 116 T.C. 438, 440-443 (2001).  To shift

the burden, the taxpayer must also have complied with

requirements to cooperate with the Commissioner's reasonable

requests for witnesses, information, documents, meetings, and

interviews.  Sec. 7491(a)(2).  The taxpayer has the burden to

prove the requirements have been met.  Snyder v. Commissioner,

T.C. Memo. 2001-255 (citing H. Conf. Rept. 105-599, at 240-241

(1998), 1998-3 C.B. 747, 994-995).

Petitioners reasonably complied with respondent's requests

for information, documents, and meetings.  Petitioners also

produced credible evidence to establish that Mr. Speltz worked a

sufficient number of hours and the nature of the activities he

performed.[7]  Accordingly, we find that section 7491 shifts the

burden of proof to respondent.  Respondent therefore bears the

burden of proving that petitioners are not entitled to exclude or

deduct Mr. Speltz's reimbursements for insurance premiums and

medical expenses.

II.  Excludability of Medical Premiums and Reimbursements

Gross income generally includes all income from whatever

source derived.  Sec. 61(a).  This section has been interpreted

---

[7]Petitioners conceded that some of the hours Mrs. Speltz
noted were personal and could not be counted.  Mrs. Speltz
subtracted those hours from the tabulation of the hours Mr.
Speltz spent performing daycare-related tasks.

broadly to encompass all gains except those specifically excluded by Congress. See Commissioner v. Glenshaw Glass Co., 348 U.S. 426, 430 (1955).

Consistent with this rule, payments by an employer to an employee through accident and health insurance for personal injuries or sickness are generally included in gross income. Sec. 105(a). An exception exists, however. Employees may exclude from gross income employer-paid "reimbursements" for medical care expenses. See secs. 105(b), 106(a), 213(d); Schmidt v. Commissioner, T.C. Memo. 2003-325; see also Rev. Rul. 71-588, 1971-2 C.B. 91 (sanctioning payments from an employer-spouse to an employee-spouse).[8] We must therefore determine whether the exception applies and whether petitioners may exclude benefits from income.

To qualify for excludability, benefits must be received under a proper plan, notice or knowledge of the plan must be reasonably available to those covered, and there must be a bona

---

[8]We are aware that revenue rulings are not binding on this Court or other Federal courts. Rauenhorst v. Commissioner, 119 T.C. 157, 171 (2002); Frazier v. Commissioner, 111 T.C. 243, 248 (1998). The public has a right, however, to rely on positions taken by the Commissioner in published guidance. Alumax, Inc. v. Commissioner, 109 T.C. 133, 163 n.12 (1997), affd. 165 F.3d 822 (11th Cir. 1999); Am. Campaign Acad. v. Commissioner, 92 T.C. 1053, 1070 (1989); Nissho Iwai Am. Corp. v. Commissioner, 89 T.C. 765, 778 (1987); see also Rev. Proc. 89-14, sec. 7.01(5), 1989-1 C.B. 814, 815 (taxpayers may rely on published revenue rulings in determining the tax treatment of their own transactions).

fide employee.  See secs. 105(b),(e), and 106(a); <u>Larkin v. Commissioner</u>, 48 T.C. 629, 635 (1967), affd. 394 F.2d 494 (1st Cir. 1968); <u>Tschetter v. Commissioner</u>, T.C. Memo. 2003-326 (there need not be a written plan or enforceable employee rights under the plan so long as the participant has notice or knowledge of the plan); sec. 1.105-5(a), Income Tax Regs.

Respondent argues that Mr. Speltz's medical premiums and reimbursements should not be excluded from petitioners' income because there was no proper plan under section 105(b). Alternatively, if there was a proper plan, respondent argues that notice or knowledge of the plan was not reasonably available to Mr. Speltz.  Respondent also argues that Mr. Speltz did not meet his contractual obligations under the "client data sheet" to work 12.5 hours each week.  Finally, respondent argues that Mr. Speltz was not an employee of the daycare.  We address each argument in turn.

<u>Whether There Was a Proper Plan</u>

Section 105(b) and the underlying regulations provide guidelines as to what constitutes an accident and health plan. See sec. 105(e); sec. 1.105-5(a), Income Tax Regs.  A plan may be nonfunded or funded, insured or uninsured, it may cover one or more employees, and different plans may exist for different classes of employees.  See sec. 105(e); <u>Wigutow v. Commissioner</u>, T.C. Memo. 1983-620 (the regulation contemplates a plan for the

benefit of a single employee); sec. 1.105-5(a), Income Tax Regs. So long as the participant has notice or knowledge of the plan, there is no requirement that it be in writing or that an employee's rights under the plan be enforceable. See <u>Wigutow v. Commissioner</u>, <u>supra</u>.

The daycare accident and health plan is detailed in Mrs. Speltz's "client data sheet," which states that the medical benefits plan would be effective in March 2000, that employees were eligible to receive up to $6,500 a year in reimbursements, and that employees had to work a minimum of 12.5 hours a week to be eligible to receive benefits. On these facts, we find that the daycare established a proper accident and health plan.

<u>Whether Mr. Speltz Had Notice or Knowledge of the Plan</u>

Respondent also argues that notice or knowledge of the plan was not reasonably available to Mr. Speltz. We disagree. Mr. Speltz signed a document indicating that his salary would be in the form of reimbursements for insurance premiums and medical expenses up to $6,500 a year, he credibly testified that he had knowledge of the accident and health plan, and most importantly, Mr. Speltz used the plan. See <u>id.</u> (a taxpayer's signing the document declaring the plan is evidence that the taxpayer had knowledge of the plan); see also <u>Charles Schneider & Co. v. Commissioner</u>, 500 F.2d 148, 155 (8th Cir. 1974) (the Court is the exclusive judge of the credibility of the witnesses in making its

factual findings), affg. T.C. Memo. 1973-130.  We therefore find that Mr. Speltz had notice and knowledge of the plan.

<u>Whether Mr. Speltz Met the Hourly Requirement</u>

Respondent also argues that Mr. Speltz worked less than the minimal hour requirement and, consequently, failed to fulfill his contractual obligations under the accident and health plan.  More specifically, respondent cites Mrs. Speltz's "client data sheet," which states that employees are to work a "minimum" of 12.5 hours a week and a minimum of 7 months a year.  Respondent interprets the term "minimum" as requiring Mr. Speltz to work 12.5 hours "every" week, rather than an average of 12.5 hours a week.

Interpreting the client data sheet, as respondent contends, to require Mr. Speltz to work 12.5 hours every week would render the 7 month a year minimum requirement superfluous--Mr. Speltz would by definition have to work 12 months a year.  Moreover, petitioners' employment contract requires employees to work an "average" of 12.5 hours a week, not a "minimum" of 12.5 hours. We find that Mrs. Speltz intended employees to work an average of 12.5 hours a week.

Interpreting the client data sheet in this manner produces consistency among the client data sheet, the employment contract, petitioners' stated intent that Mr. Speltz work an average of 12.5 hours a week, and that petitioners documented that Mr. Speltz worked an average of 12.5 hours a week.  Accordingly, Mr.

Speltz fulfilled his contractual obligations under the accident and health plan.  We next determine whether Mr. Speltz was a bona fide employee of the daycare.

Whether Mr. Speltz Was an Employee

Whether an employer-employee relationship exists is a factual question.  See Profl. & Executive Leasing, Inc. v. Commissioner, 862 F.2d 751, 753 (9th Cir. 1988), affg. 89 T.C. 225 (1987); Air Terminal Cab, Inc. v. United States, 478 F.2d 575, 578 (8th Cir. 1973); Packard v. Commissioner, 63 T.C. 621, 629-630 (1975); see also Haeder v. Commissioner, T.C. Memo. 2001-7.  Courts typically apply a common law agency test to determine whether an employer-employee relationship exists.  See, e.g., Nationwide Mut. Ins. Co. v. Darden, 503 U.S. 318, 323-324 (1992); Community for Creative Non-Violence v. Reid, 490 U.S. 730, 751-752 (1989); Matthews v. Commissioner, 92 T.C. 351, 360 (1989), affd. 907 F.2d 1173 (D.C. Cir. 1990).  Moreover, where a family relationship is involved, close scrutiny is required to determine whether a bona fide employer-employee relationship existed and whether payments were made on account of the employer-employee relationship or on account of the family relationship.  See Denman v. Commissioner, 48 T.C. 439 (1967); Haeder v. Commissioner, supra; Shelley v. Commissioner, T.C. Memo. 1994-432; Martens v. Commissioner, T.C. Memo. 1990-42, affd. without published opinion 934 F.2d 319 (4th Cir. 1991);

Jenkins v. Commissioner, T.C. Memo. 1988-292, affd. without published opinion 880 F.2d 414 (6th Cir. 1989); Furmanski v. Commissioner, T.C. Memo. 1974-47.  Because we shifted the burden under section 7491, respondent has the burden to prove that Mr. Speltz was not a bona fide employee of the daycare during the years at issue.

In determining whether a hired person is an employee under the general common law of agency, we consider several non-exclusive factors.[9]  See Nationwide Mut. Ins. Co. v. Darden, supra; NLRB v. United Ins. Co., 390 U.S. 254, 258 (1968); Profl. & Executive Leasing, Inc. v. Commissioner, 89 T.C. 225, 232 (1987), affd. 862 F.2d 751, 753 (9th Cir. 1988).  Inevitably cases turn on the particular facts of each case, and no one factor is controlling.  See Profl. & Executive Leasing, Inc. v. Commissioner, supra.

The "fundamental" test of whether an employer-employee relationship exists is whether the hiring party has the "right to

_____

[9]Courts have looked to factors including the hiring party's right to control the employee, the skill required, the source of the instrumentalities and tools, the location of the work, the duration of the relationship between the parties, whether the hiring party has the right to assign additional projects to the hired party, the extent of the hired party's discretion over when and how long to work, the method of payment, the hired party's role in hiring and paying assistants, whether the work is part of the regular business of the hiring party, whether the hiring party is in business, provides employee benefits, and the tax treatment of the hired party.  See Community for Creative Non-Violence v. Reid, 490 U.S. 730, 751-752 (1989).

control" the activities of the individual whose status is in issue. See <u>Profl. & Executive Leasing, Inc. v. Commissioner</u>, <u>supra</u>; <u>McGuire v. United States</u>, 349 F.2d 644, 646 (9th Cir. 1965); <u>Packard v. Commissioner</u>, <u>supra</u> at 629; <u>Weber v. Commissioner</u>, 103 T.C. 378, 387 (1994), affd. 60 F.3d 1104 (4th Cir. 1995); see also <u>Alsco Storm Windows, Inc. v. United States</u>, 311 F.2d 341, 343 (9th Cir. 1962); secs. 31.3401(c)-1(b), 31.3121(d)-1(c)(2), Employment Tax Regs. We consider this factor first.

Mr. Speltz was contractually obligated to work for the daycare, and he credibly testified that he understood Mrs. Speltz had the right to control his activities. See <u>Charles Schneider & Co. v. Commissioner</u>, 500 F.2d at 155. When Mr. Speltz arrived home, Mrs. Speltz generally split the children into two groups, directing which children Mr. Speltz cared for and where he cared for them. Mrs. Speltz also controlled the amount of compensation Mr. Speltz received, and she had the contractual right to discharge Mr. Speltz.

Further, Mr. Speltz did not require repetitious instruction. His tasks were limited and consistent. See <u>Ewens & Miller v. Commissioner</u>, 117 T.C. 263, 270 (2001) (the employer need not supervise every detail of the work environment or set the employee's hours to control the employee) (citing <u>Gen. Inv. Corp. v. United States</u>, 823 F.2d 337, 342 (9th Cir. 1987)); <u>Weber v.</u>

Commissioner, supra at 387 (the degree of control necessary to find employee status varies with the nature of the services provided). Mrs. Speltz provided a sufficient level of direction and control for Mr. Speltz to perform his required duties under the circumstances. We find on the record that Mrs. Speltz had the right to control Mr. Speltz.

In addition to the control factor, other factors support petitioners' employer-employee characterization. For instance, Mrs. Speltz's calendar notations during the years at issue confirm that Mr. Speltz consistently worked for the daycare, she paid Mr. Speltz in employee benefits, Mr. Speltz's work was integral to the daycare's operation, Mr. Speltz was trained to work in childcare, and petitioners' employment contract evidences petitioners' intent to create an employer-employment arrangement. See generally Community for Creative Non-Violence v. Reid, 490 U.S. 730, 751-752 (1989).

Moreover, this case is distinguishable from cases finding that no employer-employee relationship existed among family members, usually where the taxpayers failed to substantiate the services provided. See, e.g., Shelley v. Commissioner, supra (taxpayer did not document any services the taxpayer's spouse performed); Martens v. Commissioner, supra (little to no records substantiated the services provided). Petitioners substantiated the tasks Mr. Speltz performed in detail.

We also find <u>Haeder v. Commissioner</u>, <u>supra</u>, which respondent cited, distinguishable.  In <u>Haeder</u>, the Court found no employer-employee relationship existed between two spouses, where one spouse had a legal practice at home and the other spouse assisted with secretarial, clerical, bookkeeping, and cleaning services. <u>Haeder v. Commissioner</u>, T.C. Memo. 2001-7.  In <u>Haeder</u>, the taxpayer-attorney admitted that the law practice had few clients during the years at issue and required little assistance. Moreover, only the taxpayer-attorney testified, and the Court found that testimony vague, generalized, and conclusory.  Nor did the taxpayers document the spouse's purported work activities or the time spent working.  <u>Id.</u>

Our case is therefore distinguishable from <u>Haeder</u>.  While the record in <u>Haeder</u> was "devoid" of credible evidence that an employer-employee relationship existed, petitioners submitted credible evidence and testimony concerning the nature of Mr. Speltz's activities and Mrs. Speltz's direction of those activities.

Finally, we have applied close scrutiny to the facts and find that the daycare payments were made on account of the employer-employee relationship and not on account of the family relationship.  See <u>Denman v. Commissioner</u>, 48 T.C. 439 (1967); <u>Haeder v. Commissioner</u>, <u>supra</u>; <u>Shelley v. Commissioner</u>, T.C. Memo. 1994-432; <u>Martens v. Commissioner</u>, T.C. Memo. 1990-42.  Mr.

Speltz's activities were essential to the daycare business operations. Accordingly, we find that payments made under the daycare's medical benefits plan in the form of reimbursements are excludable from petitioners' gross income under section 105(b).

III. Deductibility of Medical Premiums and Reimbursements

We next determine whether Mrs. Speltz may deduct the medical cost of insurance premiums and medical reimbursements paid on Mr. Speltz's behalf from daycare business income. Petitioners may deduct medical costs attributable to Mr. Speltz if they substantiated the amount deducted and established that the amounts were ordinary and necessary and reasonable in amount.[10]

Whether Payments to Mr. Speltz Were Ordinary and Necessary Business Expenses

Respondent argues that petitioners' employee benefit program expense should be disallowed because petitioners deducted, in part, personal expenses, which are not ordinary and necessary business expenses and are therefore not deductible. Petitioners aver that the amounts deducted were ordinary and necessary business expenses and that the personal characteristics of the activities Mr. Speltz performed should not supplant the predominant business purpose of those activities.

Taxpayers may deduct all ordinary and necessary expenses paid or incurred during the taxable year in carrying on a trade

---

[10]We previously determined that an employer-employee relationship existed.

or business, including a reasonable allowance for salaries or other compensation for personal services actually rendered. Sec. 162(a)(1). An expense is considered "ordinary" if commonly or frequently incurred in the trade or business of the taxpayer. Deputy v. du Pont, 308 U.S. 488, 495-496 (1940). An expense is "necessary" if it is appropriate or helpful in carrying on a taxpayer's trade or business. Commissioner v. Heininger, 320 U.S. 467, 475 (1943); Welch v. Helvering, 290 U.S. at 113.

Ordinary and necessary business expenses include payments to employees for sickness, hospitalization, medical expense, or a similar benefit plan. Secs. 162(a), 213(a); sec. 1.162-10(a), Income Tax Regs. The test for deductibility in the case of compensation payments is whether they are reasonable in amount and are in fact payments purely for services. See Cardwell v. Commissioner, T.C. Memo. 1982-453 (citing United States v. Haskel Engg. & Supply Co., 380 F.2d 786, 788 (9th Cir. 1967)); sec. 1.162-7(a), Income Tax Regs. Expenses must also be directly or proximately related to the taxpayer's trade or business. Deputy v. du Pont, supra at 494-495; sec. 1.162-1, Income Tax Regs.

While taxpayers may generally deduct ordinary and necessary expenses paid or incurred in carrying on a trade or business, taxpayers may not deduct personal, living, or family expenses. See secs. 162(a), 262; see also Feldman v. Commissioner, 86 T.C. 458, 464 (1986); Sharon v. Commissioner, 66 T.C. 515, 522-525 (1976), affd. 591 F.2d 1273, 1275 (9th Cir. 1978). Moreover,

where there is a mixture of business and personal aspects, some discretion is permitted to determine which considerations predominate and whether any part of the expenditure may qualify for a deduction. See Feldman v. Commissioner, supra at 464; Heineman v. Commissioner, 82 T.C. 538, 542 (1984) (the distinction between business expenses and personal expenses is based on a weighing and balancing of the facts and circumstances in each case); Sharon v. Commissioner, supra at 524 (a weighing and balancing of the facts is required to give the business and personal characteristics their proper order of importance).

We agree with respondent that the hours Mr. Speltz spent picking up mail and groceries and those spent transporting firewood without children are not sufficiently business oriented to warrant an expense deduction. Nonetheless, Mr. Speltz completed a substantial number of hours of business-oriented services for the daycare that Mrs. Speltz credibly substantiated. We therefore find that the medical expense deductions attributable to Mr. Speltz's business-oriented activities were ordinary and necessary business expenses of the daycare.

Whether the Payments Were Reasonable in Amount

We must also determine whether the amounts paid to Mr. Speltz as compensation were reasonable in amount. Mr. Speltz was paid $3,279 in 2000 and $4,539 in 2001. Whether amounts paid as wages are reasonable compensation for services rendered is a question of fact to be decided on the basis of the facts and

circumstances of each case.  See <u>Estate of Wallace v. Commissioner</u>, 95 T.C. 525, 553 (1990), affd. 965 F.2d 1038 (11th Cir. 1992).  Further, there are no fixed rules or exact standards for determining what constitutes reasonable compensation.  See <u>Golden Constr. Co. v. Commissioner</u>, 228 F.2d 637, 638 (10th Cir. 1955), affg. T.C. Memo. 1954-221.  With these rules in mind, we determine whether the compensation Mr. Speltz received for business-related services was reasonable in amount.

Mrs. Speltz recorded that Mr. Speltz worked 517.25 hours in 2000 and 655 hours in 2001.  During those years, Mr. Speltz received medical benefits of $3,279 and $4,255.58, respectively.  Mr. Speltz therefore received approximately $6.34 an hour in 2000 ($3,279/517.25) and $6.50 an hour in 2001 ($4,255.58/655).  Mr. Speltz's hourly rate is comparatively low considering the $13 an hour that Mrs. Speltz testified she would have had to pay a daycare substitute.  Eliminating even half of Mr. Speltz's hours would produce a not unreasonable amount of compensation at $12.69 an hour in 2000 ($3,279/258.5) and $13.06 an hour in 2001 ($4,255.58/325.75).  Even assuming arguendo, therefore, that half the hours Mrs. Speltz logged for Mr. Speltz were personal and disallowable, we would nonetheless still find the compensation provided Mr. Speltz in the years at issue reasonable in amount.

IV.  <u>Whether Petitioners May Deduct Insurance Premiums</u>

In the alternative, respondent argues that the "insurance premium" component of Mr. Speltz's reimbursements is not

deductible under section 162(l). On the contrary, petitioner contends that section 162(l) applies only to self-employed individuals and that because the deductions are attributable to Mr. Speltz, an employee, section 162(l) does not apply.[11] We agree.

Under section 162(l), a self-employed taxpayer may deduct the cost of medical insurance premiums under certain conditions. A self-employed taxpayer may not deduct the cost of medical insurance premiums, however, if the self-employed taxpayer is eligible to participate in a subsidized health plan of another employer of the taxpayer or of a spouse's employer. Sec. 162(l)(2)(B).

Mrs. Speltz is self-employed. She deducted on the daycare Schedules C the cost of medical insurance premiums paid for Mr. Speltz under the daycare's accident and health plan for employees, and she was eligible to receive medical benefits through Mr. Speltz's subsidized health plan with Fastenal, his full-time employer.

While section 162(l) applies to Mrs. Speltz because she is self-employed, section 162(l) does not apply to Mr. Speltz. See secs. 162(l)(1)(A), 401(c)(3). Because the premiums were paid for medical insurance for Mr. Speltz, the limits of section

---

[11]The deduction amounts of $705.82 in 2000 and $968.06 in 2001 constituted medical, dental, and cancer insurance premiums. The full amounts deducted were $3,279 in 2000 and $4,539 in 2001.

162(l) and section 162(l)(2)(B) do not apply.  Accordingly, petitioners are entitled to deduct their expenses for medical insurance premiums for Mr. Speltz.

In reaching our holding, we have considered all arguments made, and, to the extent not mentioned, we conclude that they are moot, irrelevant, or without merit.  To reflect the foregoing and the concessions of the parties,

<u>Decision will be entered</u>

<u>for petitioners</u>.